Porter, Taylor & Co. v. Hanson et al.

---

## PORTER, TAYLOR & CO. v. HANSON ET AL.

1. PRACTICE IN CHANCERY: *Decree on constructive service: Opening decree.*
   All or any of the defendants constructively summoned, who have not appeared to the suit, may, at any time within five years after the decree against them, appear and obtain a new trial, and make defense as a matter of right, and without showing merits as a condition precedent; but the former judgment or decree will remain until the re-trial; to be then confirmed, modified, or set aside.

Porter, Taylor & Co. v. Hanson et al.

2. ASSIGNMENT: *Of redemption money of land bought under execution.*

If a debtor in anticipation that land purchased by him at execution sale will be redeemed, assign to his creditors the right to receive the redemption money in payment of their debts, and appoint and empower in the assignment an agent to sell the land and pay the debts, if it be not redeemed, this gives to the creditors a security upon the land for their debts, if it be not redeemed; and if the debtor die, and the land, not being redeemed, be conveyed to his heirs, and the agent refuse to execute the power to sell, equity will execute it by selling the land and divesting the title of the heirs for the payment of the debts.

3. ATTORNEY'S LIEN: *Follows the fund recovered.*

An attorney has a lien for his fee upon the fund recovered; and if, in satisfaction of a judgment for money, the client purchases land sold to satisfy it, the lien attaches to the land.

4. SAME: *Filing with clerk, etc.*

The filing of a statement of an attorney's lien with the clerk and noting it upon the record, as provided by the Civil Code, is necessary only for the protection of those who, in good faith, and without notice, make payments on the judgment.

5. SAME: *Priority and extent of.*

An attorney's lien upon the fund or property recovered is superior to the rights of either the assignee or heirs of the plaintiff, in the property; but it extends only to his compensation for services in the particular suit in which it is claimed.

6. CHANCERY SALES: *Commissioner's report: Purchasers subject to orders of court.*

A chancery commissioner's report of his sales is *prima facie* true; and the reported purchasers of the property sold become parties to the proceedings and subject to the orders of the court, and may be compelled by summary orders and proceedings to obey the orders and decrees under which the sales were made.

APPEAL from *St. Francis* Circuit Court in Chancery. Hon. J. N. CYPERT, Circuit Judge.

REPORTER'S STATEMENT.

In August, 1877, Hanson, Weatherford & Estes, a law

firm, filed in the circuit court in St. Francis county, their complaint in equity against the heirs of J. M. Farrow, and D. T. Porter, W. F. Taylor, and G. W. Macrae, as partners composing the mercantile firm of Porter, Taylor & Co., and the first two as surviving partners of the late firm of Newton Ford & Co., all non-residents of Arkansas, stating in substance, that by the employment of J. M. Farrow in his lifetime, they had, before then, filed a complaint in equity, in said court, against one John Parham to enforce a vendor's lien for the purchase-money on certain lands in the county (describing them), sold to him by Farrow, and had obtained a decree for the sum of $6,037, which was declared a lien on the lands, and for which they were sold by a commissioner of the court, and were purchased by Farrow, the plaintiff in the suit, at the price of $4,800.

That the court had confirmed the commissioner's report of the sale, but had postponed the execution of the deed, holding that Parham was entitled to one year to redeem. That before the year expired Farrow died, and the deed had, by order of the court, been made to his heirs, the defendants in this suit.

In addition to the services in said suit the plaintiffs were required to render other services in Tennessee, in the examination of the title to lands there, and the validity of a trust sale made to secure said indebtedness, and the removal of incumbrances from said Tennessee lands, so that Farrow could obtain a good title; all of which was part and parcel of the consideration of the lands in St. Francis county. They also had to go to Helena to apply for the appointment of a receiver for said lands, at an expenditure of time and money. For these several services they claimed a fee and the reimbursement of their expenditures.

They allege that Newton, Ford & Co. and Porter, Taylor

38—36

& Co. claim some sort of incumbrance on the lands ; but if valid it was subordinate to the plaintiff's lien for professional services ; and they prayed for an account to ascertain their fees—that they be declared a lien upon the lands, and the lands be sold for their payment.

The defendants were notified by warning order, and an attorney *ad litem* was appointed for them, and a guardian *ad litem* for the infant defendants.

There was no answer to the complaint, except the usual answer of the guardian *ad litem*, denying the allegations. At the April term, 1878, the court rendered a decree for the plaintiff for $600, made it a lien upon the land, and ordered the land sold by a commissioner, who on the sixteenth day of April, 1879, reported to the court that he had offered the land in pursuance of the decree to the highest bidder, and struck it off to Porter, Taylor & Co., at the price of $2,975, which was bid for them by their attorney, but that afterwards they refused to pay or give their note for the land. By authority of their attorney he indorsed at the time their names upon the memorandum of the sale, as the purchasers.

On the twenty-first of April, 1879, Porter, Taylor & Co. and Newton, Ford & Co. filed their motion to vacate the decree for the sale of the land, accompanied with their answer and cross-complaint.

In the answer and cross-complaint they admit the services performed by the plaintiffs in Arkansas in obtaining the decree for the enforcement of Farrow's vendor's lien, and the sale of the land—the failure of Parham to redeem—the death of Farrow and the making of the deed to his heirs, as stated in the complaint. They know nothing of the alleged services of the plaintiffs in Tennessee and Helena, and insist that if performed, they were not a lien upon the lands in Arkansas. They deny that the services

of the plaintiffs in the suit in St. Francis county was of the value claimed by them, and assert that they were performed upon an express contract with Farrow for five per cent. upon the amount recovered, and that that was the full value of their services; and that they had not pursued the course provided by the Civil Code to establish their lien, and therefore had none as against any one then holding an interest in said lands or an incumbrance upon them; and they assert that during the year given to Parham to redeem the lands, Farrow, the purchaser and plaintiff in that suit, being indebted to Porter, Taylor & Co. in the sum of $3,188, and to Newton, Ford & Co. in the sum of $3,050, and expecting Parham to redeem the lands, executed to them an instrument, assigning to them the right to receive and collect the redemption money from Parham, to be applied to said debts *pro rata*, and providing that if Parham should fail to redeem, then one John B. Cummins, should, as trustee, sell the lands and appropriate the proceeds to said debts. They then set out the death of Farrow—the failure of Parham to redeem, and the making of title to the lands, to his heirs; and assert an equity, by virtue of the assignment, superior to that of the heirs, and superior to the plaintiffs' attorney's lien; but if not superior to the latter, they offer to pay it off. They say that Cummins refuses to execute the trust by selling the lands; and they pray that the court appoint a trustee to execute the trust by selling the land for the payment of their debts, and for other relief.

With the cross-complaint the appellants exhibited the alleged assignment executed by Farrow on the twenty-first of February, 1876, which, after reciting the decree recovered by him against Parham, the sale of the land, that Farrow was allowed until the eighteenth day of September, 1876, to redeem by paying the bid and

cost, and fifteen per cent., and that Farrow was in-debted to the appellants, as before stated, provided, that: "Now, therefore, in consideration of the premises the said J. M. Farrow, party of the first part, and the said Porter, Taylor & Co. and Newton, Ford & Co., parties of the second part, have entered into the following agreement: that is to say, the said J. M. Farrow, in the event said lands are redeemed, hereby assigns and empowers the said parties of the second part to demand and receive and receipt for the said redemption money and to appropriate the same when collected, *pro rata*, in payment of said indebtedness; and he hereby relinquishes to them all right to collect and re-ceive the same that he may have. And in the event the the said Parham shall fail to redeem the said lands and a deed thereto shall be made to said Farrow, and in case the said Parham shall not pay over to the parties of the second part the amount of said redemption, the said J. M. Farrow hereby constitutes and appoints John B. Cum-mins his true and lawful attorney for him and in his place and stead, to sell said lands at public auction at the court-house door in Forrest City, Arkansas, at any time after the first day of February next, after having given twenty days' notice by advertisement in some paper published at Forrest City, in Arkansas; and to appropriate the proceeds, first, to the necessary cost of sale; second, to said debts, and third, the balance, if any, to said Farrow."

Afterwards, on the twenty-second of April, 1879, they filed exceptions to the report of the commissioner, reporting the sale of the lands to them; first, denying that the lands were bid off by them, or by any one authorized to bid for them; and second, alleging that they had already filed a mo-tion to vacate the decree for the sale, and also their answer and cross-bill in said cause, and that the proceedings and decree were illegal for the reasons therein stated.

On the twenty-third of April, 1879, the appellees filed their motion to strike the answer and cross-complaint from the files, because:

1. A non-resident could not prosecute a cross-action after decree rendered.

2. The decree was not against the appellants, but for the sale of lands of Farrow to satisfy a lien upon them.

3. The appellants were not necessary parties, but only proper parties to the suit, whose rights could be better adjudicated under original proceedings.

On the twenty-fourth of April, 1879, upon the hearing of the commissioner's report and the exceptions thereto, the court upon the evidence adduced, overruled the exceptions and confirmed the report, and directed an execution as at law, to issue against the purchasers for the amount of their bid if they failed to pay it in thirty days; and that when paid, the lien of the appellees and the cost of the suit be first paid, and the balance be paid to the heirs of Farrow. And the motion of appellants to vacate the decree, and to allow them to file their answer and cross-complaint was overruled by the court; to all of which the appellants excepted, and have appealed to this court.

*Sanders*, for appellants:

Appellants should have been allowed to come in and make defense. *Gantt's Digest*, sec. 4732. They had only been constructively summoned, and five years had not elapsed.

The assignment vested in appellants a present equity, notwithstanding the power to execute a deed by J. B. Cummins, may have been lost by the death of Farrow. *Wash. on Real Prop.*, Vol. II, p. 629, secs. 2 and 3; *Roach v. Wadham*, 6 *East. Rep.*, 286; *Holmes v. Coghill*, 7 *Vesey's C. R.*, 499; *Story's Equity*, Vol. I, p. 191.

Equity will enforce an inchoate trust. *Kuykendall v. Gilbreath*, 3 *Ark.*, 225; *Story's Equity*, Vol. *I*, sec. 172; *Jones on Mortgages*, Vol. *I*, sec. 60; Vol. *II*, 1777; *Brisbane v. Stoughton*, 17 *Ohio R.*, 482.

The statute authorizes defense by cross-bill or otherwise. See *Gantt's Digest*, secs. 4732, 4569; *New. Plead. & Prac.*, pp. 546 and 547.

The court erred also in confirming the report of the sale of the lands to Porter, Taylor & Co. *Quere*, was the decree such as would give them title against the minor heirs of Farrow? See *Gantt's Digest*, secs. 4666 and 4726. Besides, this agreement to purchase, being voluntary, should not have been enforced without being clearly and distinctly proven.

*Weatherford & Estes*, for appellees:

Section 4732 of Gantt's Digest, construed with section 3599, does not entitle a party to have a decree set aside on motion, until it is adjudged that there is a valid defense to the action.

If their claim is superior and paramount, they need not be made defendants, or be heard in the suit. Their rights will not be affected. *Story's Eq. Pl.*, sec. 230; *Eagle Fire Ins. Co. v. Hunt*, 6 *Paige*, 635; *Lange v Jarvis*, 5 *Leigh*, 192.

The defendants are not within the spirit and intent of the remedy.

Do they show any right to the assignment in trust? A power of attorney, uncoupled with any interest in the estate itself, dies with the grantor. *Yeates v. Prior*, 11 *Ark.*, 77; *Garland v. Nunn*, ib., 727; 2 *Wash. on Real Property*, 324 (*Mar.*).

It is contended further by appellees, that the statute allowing non-residents to come in and defend, does not

Porter, Taylor & Co. v. Hanson et al.

allow them to open a decree for offensive proceedings, but only for defense.

The rule of *caveat emptor* prevails in judicial sales. *Pickett v. Bank*, 32 *Ark.*, —; *Allen v. McGaughery*, 31 *Ark*, —; *Black v. Walton*, *MS.* The question is, did they buy? And was the transaction free of fraud? No fraud is alleged. All the circumstances show clearly that they authorized the purchase, and induced the commissioner to report it, and adjourn without further sale. They have never, under oath, denied that they had authorized the purchase.

Parties will be held bound by the action of their attorneys, unless they repudiate it in reasonable time. *Byers v. Fowler*, 14 *Ark.*, 98. This is no voluntary agreement, as in case of *Baker v. Hallobaum*, cited from 15 *Ark.*, —, but a contract for value, not within the statute of frauds, and a valid judicial sale. See, on this point, the case, in MS., of *Black v. Walton*.

It is not deemed necessary to discuss the question of the attorney's lien, as it has not been raised. See *Browne v. Bigbey*, 3 *Cooper's Chan. Cases*, 618, for a discussion of the question.

### OPINION.

EAKIN, J. This case presents these questions:

1. Do the motion and accompanying answer and cross-bill of appellants show in them any such rights as would entitle them to move the court to set aside the decree rendered on constructive service, and admit them to defend?

*1. Opening decree rendered on constructive service. Defendants may appear and defend.*

2. What are the priorities as between them and the appellees claiming an attorney's lien?

3. If they have no priority, do they show any right to contest the amount of the lien?

Upon the first point, the case is *prima facie* in their favor.

Porter, Taylor & Co. v. Hanson et al.

They were made defendants, which indicates the opinion of appellees (complainants below), that they had some such claim as should entitle them to a hearing, and which required to be adjudicated. Besides, the statute is imperative and unconditional, as to all defendants constructively summoned, who did not appear. (*Gantt's Digest, sec. 4732*). All or any of them may, within five years, appear in court and move for a new trial, and are entitled, as a matter of right, upon giving security for costs, to be admitted to make defense. They need not show merits as a condition precedent. They risk the costs, and are entitled to have the matter of merits determined on demurrer, or evidence after the doors are opened. They have no right, however, to have the former judgment, meanwhile, vacated on motion. It remains until the case is re-tried, to be then confirmed, modified or set aside.

*They need not first show merits.*

Nevertheless, if the court should refuse to admit a defendant to make defense, and the answer which he proposes to file should not disclose any substantial right, the error would not be so prejudicial to him as to require correction. If the defense is incorporated with the motion, it may be considered to include all the defendant means to stand upon.

*2 Assignment: Of redemption money of land bought under der execution.*

The rights disclosed, rest upon the instrument called an "assignment," or "power of attorney," for the terms of which, reference is made to the reporter's statement. It was executed before the final confirmation of the sale in the original mortgage suit, but after the sale had been made and approved by the court. By order of the court, the title still remained in the original defendant.

It will be observed that Farrow did not assign the decree itself, or his interests under it. He attempted only to assign the specific sum which Parham, defendant in the original suit, might pay for redemption. He was under no

Porter, Taylor & Co. v. Hanson et al.

obligation to pay anything, nor to redeem at all.   This was
a future contingent interest in a fund, which never came
into existence, inasmuch as Parham never redeemed.   As
an assignment, the instrument had, at law, no original
validity, and although good in equity if anything had come
into existence afterwards upon which it could attach, yet it
fails there also for want of the specific fund.   As a power
of attorney, it fails also at law, because, after Farrow's
death, it could not be executed for want of any legal or
equitable title, in the attorney, which he could convey on
sale.   It only remains, then, to examine whether, by its
provisions, any trust attached, in favor of appellants, upon
the contingent equitable title then held by Farrow, and
which, descending to his heirs, became perfected in them
as a legal title, after the time allowed for redemption had
expired.

The only express trust created by the instrument was in
Cummins, the attorney, and he was made trustee, not of
any estate or title, but simply of a power, which it became
impossible for him to execute after Farrow's death, with-
out the aid of a court of chancery.   It created nevertheless
in favor of appellants, an *executed* trust of the power, in the
sense of fully defining the interest of appellants in the
subject-matter.   It was none the less an *executed* trust, be-
cause the subject-matter was contingent; and being such,
the trust would be supported by the pre-existing debt.   It
is clear enough that Farrow had the right to give such a
power for the purposes indicated, and that, but for his death,
it would have been the duty of the attorney in fact, accept-
ing the trust, to have proceeded to sell for the benefit of
appellants, and that upon such sale, Farrow would have
been compelled, in equity, to execute deeds to carry out the
powers he had thus conferred.   It is clear enough if we
consider Farrow as still alive.   What equity is there in

holding that the accident of his death should divest appellants of equities conferred upon them by Farrow, and which he desired them to retain? Death does not operate by way of revocation of vested rights, although it severs the connection between principal and agent or attorney, as to future action.

Courts of chancery will not allow rights to be lost by accident unaccompanied with laches. Relief against accidents is a common ground for their interposition. They will supply a trustee in case of the death or refusal to act, of the one appointed. Here the trustee is not dead, but can not act, because the grantor of the power being dead, and title not being in the attorney, he can not sell and make title without the aid of a court. That this is a power in trust, as distinct from a mere authority to sell, as agent, is evident upon the face of the instrument. The appellants are the intended beneficiaries, and the expressed design is to secure their debt. The maker evidently meant that they should rest upon the instrument as a security for payment; and not simply to express just and honest purposes of his own. It would not have been possible for him to use language more clearly expressive of this intention. All imperative powers are trusts. *Perry on Trusts, secs. 248, 473.*

Further, this trust not only bound the conscience of the trustee of the power, but attached to the estate, and followed it into the hands of the heirs, who obtain title through the donor. Mr. Sugden, in his work on *Powers*, *vol. 2, p. 158*, says: "But sometimes trusts and powers are blended; a man may be invested with a trust to be effected by the execution of a power given to him, which is in that case imperative, and if he refuse to execute it, or die without having executed it, equity, on the general rule that *the trust is the land*, will carry the trusts into execution at the expense of the remainderman, and without any regard

to the person in whose favor it is to be executed, being a mere volunteer, and not a purchaser, creditor, wife or child."

. Cases where powers are not trusts arise where they remain in the option of the donee to exercise for the benefit of others at his discretion. They are all trusts where other parties have the right to demand of them their execution.

Almost all the cases bearing upon the question now before us, have arisen under wills and testaments; but there is no principle to distinguish them from cases under deeds *inter vivos*, save that the latter, if of an executory character, require a consideration, whilst bequests and devises may rest solely on the bounty of the testator.

The conclusion of the court is, that it was meant by this instrument to give to appellants a security upon the lands in question, by the execution of a power to sell them for the purpose; that this power was imperative upon the donee, to be exercised upon the demand of the appellants, and that for the purposes of the power there was an implied trust in Farrow to hold any legal or equitable interest in the land, which he might obtain, to be conveyed by him to the vendee. Further, that in case of a sale, a court of chancery would have compelled such conveyance, and that no sale having yet been made, it will follow the lands into the hands of the heirs, and compel the execution of the trust by them, by divesting their title, in favor of any purchaser at a sale made under order of court.

It follows, therefore, that the appellants being entitled, to the extent of their debts, to the proceeds of the land, have such an interest, if their answer and cross-bill be sustained, as made them proper parties to the suit, and entitles them now to contest the priority of complainant's lien, or

its amount if superior to their own.   The circuit court erred in refusing to allow them a re-trial.

3. ATTOR-NEY'S LIEN: Follows the fund recovered.   Next, as to priority.   Both by statute and upon general principles of equity practice, the attorneys of Farrow in the foreclosure suit, might assert a lien upon the fund thereby recovered for services therein rendered.   The object of the suit had not been to recover land, or establish title, but to recover money by foreclosure, and as the complainant had taken land by foreclosure in place of money, it would have been just and entirely in accordance with *Hanger and Wife v. Fowler, 20 Ark., 667,* to have transferred the lien to the land.   It is useless, however, at this day, to discuss the extent of an attorney's lien, as the whole matter has been settled by the Code of Civil Practice since Hanger's case, and no language could be plainer than that of the Code, to give the lien here claimed.   See

4. ——: Filing with clerk.  *Gantt's Digest, secs. 3622, 3626.*   The necessity of filing with the clerk a statement of the lien in writing, as prescribed by the last two sections above quoted, and having the same noted in the margin of the record book near the judgment, extends only to protect those who in good faith and without notice, make payment on the judgment, and have no bearing on this case.   The assignment and power of attorney was executed by Farrow before the fund was realized under the order of the court, and being prospective in its operation could only attach upon such net ultimate points of the litigation as would inure to Farrow; which would be the money or land, subject to the lien of the attorneys through whose efforts it was obtained.   This lien was allowed by general law, and appellants might well have anticipated that it would be declared by the court upon the fund when it came in, in whatever shape it might then be.   They stand upon their assignment, if it conveyed anything, in the attitude and subject to the equities of

Porter, Taylor & Co. v. Hanson et al.

purchasers *pendente lite.* They had no right to vacate the decree then, upon the ground of priority, but do have the right to contest its amount, for the protection of such residuary interest as they may be able, upon a trial, to establish against the heirs of Farrow. We are not now determining the matter ultimately, as between appellants and the heirs, but only the action of the court in refusing to let in the appellants to answer and file their cross-bill against the proper parties, that all rights may be adjusted. We decide as to the lien of appellees for fees, that it is superior to the rights of either appellants, or the heirs, in the property, but that it extends *only* to compensation rendered in and concerning the prosecution of the special suit, in which it was declared. It will not include all of the services mentioned in their complaint. For instance, the prosecution of the suit in Tennessee, upon another note, or the investigation of securities given to secure another debt, although all the debts were created at once by Parham on the original purchase.

We find no error in the refusal of the motion to set aside the sale made by the commissioner. By his report the appellants were the purchasers. This was *prima facie* a sufficient showing that they had thereby become parties to the proceedings and subject to the orders of the court. True, they might have shown that they had not in fact bid, either by themselves or authorized agents, and attempted to do so. The Chancellor was not satisfied with the proof, and viewing it in connection with their letters, in which they would naturally have repudiated the authority of the agent, but failed to do so, we can not say the Chancellor was mistaken. The decree of the court ordering them to pay the money into the hands of the commissioner, or that execution should issue, was entirely within the power of the court, after they had actually come in and become par-

5. CHANCE-RY SALES: Commissioner's report *prima facie* true. Purchasers compelled to complete their purchases.

ties by their motion and contested their liability on the purchase. It will yet remain within the discretion of the court as equity may require, on a re-trial, to set aside the former sale and direct another, or allow that already made to stand and deal with the proceeds, compelling obedience to its orders for their payment into court.

All the English and American authorities concur in supporting the power of a court of chancery, by summary orders and proceedings, to compel bidders at sales to act in pursuance of the decrees and orders under which the sales were made. Otherwise strangers, acting secretly in the interests of a defeated party, might obstruct the proceedings of the court and bring it into contempt. Any tribunal which can be trifled with, will be. See ample authorities collected by Mr. Rover, in his work on *Judicial Sales*, sec. 152, et seq.

The cause being opened for a defense, it will be in the power of the court to entertain the cross-bill also. Indeed, the purposes of justice manifestly require it. There need be no further delay in affording relief to the appellees on their attorney's lien, than may be necessary to ascertain its amount. That being paid out of the proceeds of the sale, or advanced by appellants, the cause might still be retained for a final adjudication of all rights between appellants and the heirs and personal representatives of Farrow. They must be brought in by new service, however, for all matters connected with the cross-bill, and have day in court. All merits as between them and appellants are reserved in this opinion. The whole force of it is to declare the lien of the appellees for fees to be superior to both sets of claimants of the land, and that appellants should be let in, on the showing made by their answer, cross-bill and motion, to defend as to its amount, and prosecute their cross-bill for

title, or the residue of the fund, against the heirs and representatives of Farrow.

For error in refusing to allow appellants to file their answer and cross-bill, reverse the decree as to that, and remand the cause for further proceedings consistent with equity practice and this opinion.