## NEWTON'S HEIRS ET AL. VS. STATE BANK.

The decision in *Newton vs. State Bank,* (14 *Ark.* 11,) and *The State vs. Borden,* (15 *Ark.* 616): that if a sheriff, upon the the failure of a purchaser at an execution sale of real property, re-sell the property on the second day of the term, a *bona fide* purchaser will acquire a good title, though the act of the sheriff be irregular, having become a rule of property, will not be disturbed.

More irregularities on the part of the sheriff will not affect a *bona fide* purchaser at a public execution sale. Nor is mere inadequacy of price sufficient to avoid such sale fairly made. (*Hardy vs. Heard*, 15 *Ark.* 189.)

Where a complainant seeks to set aside an execution sale for fraud, the onus is upon him to establish the fact; and if it appear that there was no collusion with, or improper influence over the officer, nor any act, preventing a fair sale at full value, a court of chancery will not impute fraud to the purchaser at a sale publicly made after proclamation, at the court house door, within proper hours, during the session of the court.

CUMMINS & GARLAND and PIKE, for appellants.

The decision of this court in *Newton vs. The Bank of the State of Arkansas*, 14 *Ark.* 9, was, as between Newton and the Bank, something more than an ordinary authority or case in point. It was the law of the case. It was a final adjudication of the point, as between them, forever thereafter conclusive. No re-adjudication of that point could be obtained by shifting the forum; unless the Bank could not only *allege*, but *prove* fraud.

This court decided that the sheriff *had* power to sell on the next day, and that the sale to Newton was not for that reason void.

This was *res adjudicata*, between the parties, and concluded the question forever, as far as they were concerned. The point was in controversy, material to the decision of the case, raised, argued, decided. Whether decided rightly or erroneously, the decision was the law of the case, and the question could never, as between the same parties, be stirred again anywhere. On no principle could this decision of this court be treated as a *dictum*.

The question whether the resale on the second day was void, for want of power in the sheriff to sell, having been raised by the Bank, in the suit of Newton against her at common law, presented by the instructions and rulings of that court, legitimately presented to this court, urged here by the Bank, and solemnly decided here upon full consideration, the authorities, for which we need not go to any books not of ready access to any of the profession, conclusively settle, what reason suggests, that this adjudication is forever conclusive on the parties.

*Wood vs. Jackson*, 8 *Wend*. 37; 3 *Cowen & Hill's Phill. Ev. p.* 324, *n*. 586; *Marsh vs. Pier*, 4 *Rawle* 273; 1 *John. Cas.* 501; 1 *J. C. R.* 91; 5 *Ib*. 320; 7 *Ib*. 285.

It will be apparent from reading the answers that they deny *every* allegation in the bill, charging fraud, collusion, combination, an illegal design to sacrifice the property unjustly, secresy in the sale, and every fact from which any thing of the kind could by possibility with any sort of propiiety be inferred; and every one from which anything of the kind is attempted to be argued, except the single fact that the re-sale was made on the second day. And it is equally apparent that the complainant did not even attempt to prove a single one of these allegations, or indeed to prove anything at all; for it took no testimony, and that taken by the defendants disproved them.

Inadequacy of consideration is not in the nature of things *any* evidence *of itself*, of fraud or wrong in the case of a public sale at auction, because the law *could* not require a man to bid any more than he pleases.

Of course, other circumstances may exist, even in case of a judicial sale, taken in connection with which the small sum bid would be evidence of fraud and wrong: But in this case there is no proof whatever that Newton had anything to do with bringing about the re-sale, any more than any other person who was present. Lawson had notified Johnson that he would re-sell, and did so in pursuance of his resolution thus made known the day before. The re-sale took place about noon, at the court house door, upon proclamation made loud enough to be heard within the court room, after all the notice that the nature of the case allowed, and when the attorney of the Bank was present. *If the sale could legally be made on that day*, there is nothing whatever to impeach its perfect fairness, not even one little circumstance, unless it be one that Newton did not choose to bid more than two hundred dollars.

The rule as to inadequacy of consideration is correctly stated in *Hardy vs. Heard*, 15 *Ark*. 188, 189.

We protest against the idea that judicial sales may be set

aside for inadequacy of consideration, unconnected with fraud.

The principle on which sales are set aside is well enough stated in *Givan vs. Doe*, 5 *Blackf.* 262—that on *bona fide* purchaser is not affected by any irregularity or omission of the sheriff in advertising and conducting the sale. He may fairly presume that the officer has acted according to law. 'But if he, by colluding with the officer, encourage a departure from duty to agrandize himself, he ceases to be innocent. He becomes *particeps criminis* with the officer, and the law affords him no protection.' In that case the sale was set aside, because the purchasers *procured* the sheriff to re-expose the property, and sell without notice. The sale was made in pursuance of a previous understanding between them and him.

The simple solution of the whole is, as all the cases, when considered together and understood, show, that chancery will set a judicial sale aside only on the ground of fraud.

When property has been sold for less than its value, if the purchaser had any hand in bringing about the sale at an unusual time or place, or in preventing competition, the fact that he purchased át a low price is evidence that such was his intention at the beginning, and that his interference was dictated by that intention. The fact of inadequacy of consideration is the key by which to judge of and interpret his conduct. If he had bid a fair and full price, then the wrong motive not existing, the same acts could not be deemed to have been done with a bad intention. So, on the other hand, if he did not interfere, if he was neither plaintiff nor attorney, but a mere casual bidder, as there are no acts that require a key for their interpretation, the amount he chose to bid is unimportant; because it proves no more than that he exercised the common right of seeking to make a speculation by buying cheaply property sold at auction. *The inadequacy of consideration is* therefore an element of decision, only because it offers the means of judging of the *motives* by which the course of conduct of the party was dictated. See *Nelson vs. Brown*, 23 *Misso.* 21; *Stewart vs. Nelson*, 25 *id*. 312; *Abbey vs. Dewey*, 25 *Penn.* 416.

S. H. Hempstead, for appellee.

The question is, whether the sale to Newton was fraudulent or not. The chancellor held the affirmative, and decreed the cancellation of the deed, and perpetually enjoined the judgment at law; and from that decree an appeal was taken to this court.

It is an extraordinary case, and the badges of fraud are too plain to be successfully resisted or denied.

The prominent and controlling fact stands out in bold relief, and uncontradicted, that property, not encumbered, admitted in the answers, and proved to be intrinsically worth $15,000, and which cost $23,000, was sold at an unusual time for $200— about 10 per cent of its real value.

The gross inadequacy of the consideration, was itself evidence of fraud. It must shock the conscience of every fair minded man, and furnish the most vehement presumption of fraud. 1 Story's Eq. 246; Surget vs. Byers, Hempstead's C. C. R. 715; S. C., 19 How. S. C. R. 304; Stockton vs. Owings, Litt. Sel. Cas. 256; Sherry vs. Lockwood, 1 Carter's Ind. R. 575; 17 Pen. Rep. 353; 18 Wend. 611; 6 Wend. 522; 6 J. C. R. 411; 3 Blackf. 376; 4 Dallas 218; J. C. R. 338.

In this case, the inequality is so gross as to naturally raise a presumption of fraud and unfairness; and I cannot think such a sale can be allowed to stand.

The statute requires that all sales of real estate shall be made on the first day of the Circuit Court, on twenty days notice, at the court house door of the county, between the hours of nine in the forenoon and three in the afternoon, publicy by auction for ready money. Digest 503.

A sale of real estate under execution after return day is void. Kane vs. Preston, 22 Miss. 133; 12 S. & M. 147. So if made on a different day from that mentioned in the return. 8 Blackf. 180; 2 Caine's R. 61; or at a different time from that prescribed by statute. Carmick vs. Myers, 14 Barb. 10.

There is no decision in this State to the effect that a valid

**24** CASES IN THE SUPREME COURT

Newton's Heirs et al. vs. State Bank. [OCTOBER

sale can be made on any other than the first day of court, or without notice.

The cases of *Newton vs. The State Bank*, 14 *Ark.* 10, and *The State vs. Lawson*, *Id*. 114, decided no such principle, although there are some expressions and dicta in them tending that way.

And certainly in these two cases there is nothing intimated that the Bank could not have redress in chancery, but the exact contrary. For example—at 14 of the first case, the court said that *"proof that the sale was made after the day fixed by law and without notice might, when taken in connection with other evidence, conduce to prove fraud."* But it was plainly enough said, that a court of equity was alone competent to try that question.

Supposing, for argument sake, that a sale, made on the *second day of court*, without notice, is not *void; still*, it is bound to be conceded, on all hands, to be *irregular*, (15 *Ark.* 616,) and an irregularity, of which a purchaser is bound to take notice. And hence a sale, under such circumstances, and which is also marked by gross inadequacy of consideration, must of necessity be adjudged fraudulent and unfair, and set aside accordingly. See *Hayden vs. Dunlap*, 3 *Bibb* 219.

Lawson sold the lots in controversy on the *second* day, when it was his duty under the law to sell on the *first* day of court. It was not his duty to sell on the second day. He sold without notice—when it was his duty to give notice. Of course, Newton was a *particeps criminis*, in the breach of duty; because he knew he was buying on a day not appointed by law for judicial sales; and he cannot plead ignorance of the law. He knew he was buying when no notice had been or could be given for a sale on that day—he purchased, without giving one-sixteenth part of the value of the property.

Hon. HARRIS FLANAGIN, Special Judge, delivered the opinion of the Court.

The appellee and the State of Arkansas filed their bill in chancery against the heirs and administrator of Thomas W. Newton, deceased, Albert Pike and James Lawson, to set aside

a sale of the west half of lots one, two and three, in block eighty-one, in the city of Little Rock, made by James Lawson, as sheriff of the county of Pulaski, on the ground of fraud on the part of the said Thomas W. Newton, the purchaser, and the sheriff making the sale.

It is charged in the bill, that Lawson, as such sheriff, had in his hands a writ of execution against the State Bank for the sum of thirty dollars and costs, which he levied on the property in dispute and advertised it to be sold, and, on the 21st day of April, 1845, that being the first day of Pulaski Circuit Court, the property was by him sold to Euclid L. Johnson (who bought as the agent of the State of Arkansas) for two hundred and five dollars. That the State and State Bank were ready and willing to pay, and had the money, but the sheriff did not call on them for their bid, but on a subsequent day sold the property to Newton, at a secret sale, for the sum of two hundred dollars. That Newton's bid was never paid, but the sheriff returned it a sale, and executed a deed for the land to Newton. That Newton brought his action of ejectment, and recovered the property with some $4,000 rents. That the property was worth some ten thousand dollars. The bill prayed an injunction against the judgment at law, and that the sale to the State might be affirmed, and the sale to Newton set aside, and the deed from Lawson to Newton canceled.

In the bill there were several charges of fraud which will be hereafter noticed.

Afterwards, the State of Arkansas, by the order of the court, ceased to be a party complainant, for the reason that by the bill she appeared to have no interest in the event of the suit: and the suit abated as to James Lawson, who departed this life, and the suit progressed in the name of the State Bank as complainant and Newton's representatives and Albert Pike (who held under Newton) as defendants.

Those defendants who were not minors, made answer, and admitted the execution, levy and advertisement, and the sale to Johnson, but deny that Johnson bought as agent of the State

26          CASES IN THE SUPREME COURT

Newton's Heirs et al vs. State Bank.          [October

of Arkansas, and insist that he bought as agent of the State Bank: deny that either the State or State Bank had the means to pay the bid of Johnson: deny that they did pay it: say that Lawson, as sheriff, did proceed to sell the property, on the second day of the term, between the hours of nine in the forenoon and three in the afternoon of the day, at the court house door of Pulaski county, at public auction, to Thomas W. Newton for two hundred dollars, which they believe was paid. They admit the return of the sheriff, the deed to Newton, the action of ejectment and recovery as charged.

The court below decreed, canceling the deed of the sheriff to Newton and enjoining the judgment at law.

At the hearing it apppeared that the sale on the first day was to Euclid L. Johnson, as agent or attorney for the State Bank, and that said bid was not paid, and that on the second day of the term, at public sale between the hours of nine in the morning and three in the evening, at the court house door in Pulaski county, the property was sold to Thomas W. Newton for two hundred dollars.

The first question is, was this sale void for want of power in the officer to sell on that day; or was the sale merely irregular?

Thomas W. Newton, before the commencement of this suit, brought ejectment against the State Bank for the land in controversy, and on the trial the court permitted the Bank to show that the sale took place on the second day of the term; for which reason this case was reversed. See *Newton vs. The State Bank*, 14 *Ark*. 11, in which case the court say: "The sale then was not void for want of power in the sheriff to sell, and as to the irregularity of selling on a day different from that directing sheriff's sales without notice, these are irregularities which arise in the exercise of the power conferred. A departure by the officer from the statutory direction as to the manner of exercising his power does not affect the title of a *bona fide* purchaser at sheriff's sale. This has been so repeatedly decided, that it may now be regarded as settled law."

This court said in *The State vs. Borden*, 15 *Ark*. 616: "The

next question is, when then should he have sold the property so levied upon? In *Newton vs. The Bank*, we held a sale made under the same writ, on the second day of the term of the court, to which the writ was made returnable, even though erroneous, and perhaps reversible upon error for that reason, not to be void, and that a sale on that day, the writ still being in force, would communicate title in the property to the purchaser."

The court seems to have recognized, as principles of law, in the two foregoing cases:

1st. That a sheriff may, under the foregoing circumstances, sell real estate upon the second day of the term, and a bona fide purchaser will take a good title:

2nd. That in doing so, the sheriff would act irregularly, and if a proper application was made to the court before a deed was executed, the court would hold it erroneous. *State Bank vs. Noland et al.*, 13 *Ark*. 299.

These decisions have been made now, for several years, and have become rules of property, which ought not to be changed unless in cases of great necessity. The statute is defective in not providing for the disposition of property under the circumstances, and any rule which can be made here, will be adopted with hesitancy, doubt, and want of confidence. Under these circumstances, whatever might have been our opinion, if there was no decision bearing upon the case, we shall not disturb the former decision as construed by us in this opinion.

The next point which is to be decided is, will mere irregularities affect a *bona fide* purchaser at a public sale.

" It is a general rule that a *bona fide* purchaser of property at a sheriff's sale is not affected by any error or irregularity in the judgment or execution, or by any irregularity or omission by the sheriff in advertising or conducting the sale. *Given vs. Doe &c., Blackf.* 262. It is generally conceded by the authorities, that a *bona fide* purchaser at sheriff's sale, even if that purchaser be the execution plaintiff, is not affected by any irregularity or omission of the sheriff in advertising or conducting said sale. *Correil vs. Ham*, 4 *Greene Rep.* 456.

28          CASES IN THE SUPREME COURT

Newton's Heirs et al. vs. State Bank.          OCTOBER

"The purchaser depends upon the judgment, the levy and the deed, and other questions are between the parties to the judgment and the marshal. *Wheaton vs. Sexton,* 4 *Whea.* 506.

An act of South Carolina "imposed it as a duty on the sheriff to advertise all his sales in the Public Gazette, but his failing to do so could not invalidate the sale." *Turner vs. McCrea,* 1 *Nott & McCord* 11.

It has been adjudicated in our own State, that irregularities do not affect a *bona fide* purchaser, in *Whiting & Slark vs. Beebe,* 7 *Eng.* 421, and *Adamson et al., vs. Cummins ad.,* 5 *Eng.* 541; and in *Byers & McDonald vs. Fowler et al.,* 7 *Eng.* 219, it was decided that selling land on a different day from that prescribed by law and without advertisement would not affect a *bona fide* purchaser.

The authorities are abundant, and show that no mere error or irregularity will affect a *bona fide* purchaser.

The third question is, is inadequacy of price in public sales upon execution, a ground for annulling a sale in a chancery proceeding to set it aside?

Judge STORY says: "Inadequacy of consideration is not then, of itself, a distinct principle of relief in equity. The common law knows no such principle: the consideration supports the contract. Common sense knows no such principle; the value of a thing is what it will produce, and it admits of no precise standard." 1 *Story Eq* 245.

But he say, also, "still, however, there may be such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition, or some undue influence, and in such cases courts of equity ought to interfere upon the satisfactory ground of fraud. 1 *Story Eq. Jur.* 246. He cites *Hamett vs. Dundas,* 4 *Barr* 178; *Barnet vs. Spratt,* 4 *Iredell Eq. R.* 171; *Gortside vs. Underwood,* 1 *Bro. C. R.* 558.

*Hamett vs. Dundas* was a contest between a set of creditors of a failing debtor and a favorite creditor, who had bought the property under a confessed judgment. There were circumstances from which a court might well infer fraud.

OF THE STATE OF ARKANSAS. 29

Term, 1860.]        Newton's Heirs et al. vs. State Bank.

*Barnet vs. Spratt* holds that gross inadequacy of price " with other circumstances" will authorize a court of chancery to set aside a private sale.

*Gortside vs. Underwood* decides in relation to a private sale, that an insufficient consideration may set aside a contract.

Judge Story, by the words " gross imposition and undue influence," intended that there should be something more than mere gross inadequacy of price.

A sale by auction without other circumstances to justify it cannot be set aside for inadequacy of price. *White vs. Duncan,* 7 *Vesey jr.* 34.

A sale made at auction and under process of law ought not to be invalidated for mere inadequacy of price without additional circumstances to justify it. *Livingston vs. Bayne,* 11 *John. Rep.* 566.

A sale will be set aside where the purchaser led the parties to believe that the sale would not take place, and not on the ground of inadequacy of price alone. *Williamson vs. Dale,* 2 *John. Ch. Rep.* 272. This was on motion before the master's report was made, and before the deed was executed.

The Supreme Court of Indiana hold: "The rule that a sale will be set aside on account of gross inadequacy of price applies to private sales and not to public sales. 4 *Ind. Rep.* 71.

It is unnecessary to quote further authorities; and no doubt this court laid down a correct rule in *Hardy vs. Heard,* 15 *Ark.* 189: " It may be stated then as a safe and salutary rule of property that mere inadequacy of price is not sufficient to avoid a sale fairly made."

The last question in the case is, whether there was any fraud or unfairness in this case, which would affect the purchaser !

The bill charges: "that the State was able and willing to pay the bid, and that the Bank had the means, and was able and willing to pay the same for the State, and that all Lawson had to do was to call on the State, or the Bank, for the same, and that it would have been paid; that the State has been, at all times, able and willing to pay the bid to the said James Lawson, jr.,

and thus prevent a most ruinous sacrifice of property in reality belonging to herself and necessary to her business." That the sale was made to Newton on a day when he had no authority to sell. If any sale was made to Newton, it was a secret sale, made at a time when there were no persons to bid in competition with Newton, to carry out the illegal design of sacrificing the property unnecessarily, and enabling Newton to purchase for two hundred dollars, property worth from $10,000 to $15,000. The sale was *per se* fraudulent, and Newton was cognizant and confederate. Does not believe Newton has paid his bid. Lawson has not paid the execution, nor paid the balance to the Bank. That the sale and deed were the result of the combination between Newton and Lawson to sacrifice said real estate.

The answer denies all the charges of fraud specifically, to the best of their knowledge and belief.

There is a deed in evidence, which shows the execution, levy, advertisement, sale to Johnson, as attorney of the State Bank, that the bid was not paid when it was sold to Newton, and the bid paid, but does not state that it was made on the first or second day.

Nelson B. Thomason testifies that he was Lawson's principal deputy on the 21st April, 1845. There was a large number of sales on that day. The property in controversy was sold and bought by Euclid L. Johnson for the State of Arkansas. It was not Lawson's custom to re-sell on the same day, and when it was bought in by the attorneys it was not his custom to demand payment except in a public or general way. Lawson told him the property was re-sold on the 22d of April, to Newton. Witness was not present at the re-sale. Witness wrote the deed to the State of Arkansas, except a few blanks and Lawson signed it.

Elbert H. English testifies that he was present at the first sale, and that Lawson told Johnson he wanted the money, and Johnson put his hands in his breeches pocket and shook it, and said he had plenty of money. Lawson told him seriously and

OF THE STATE OF ARKANSAS. 31

Term, 1860.]        Newton's Heirs et al. vs. State Bank.

with some feeling, if he did not pay, he would re-sell the Bank. " On the next day, sometime before or after noon, I was standing on the pavement, when Lawson and, I think, Newton, passed up on the opposite side of the street towards the State House, and at the same time some one was passing down on my side, and Lawson called to him and told him he was going to sell the Bank again, and, I think, told him he had better come up and bid. I do not think Lawson re-sold on the first, but on the second day."

John C. Peay testifies that he was present at both sales; thinks the second took place on the second day of the term, when Thomas W. Newton bought. Heard the Sheriff's proclamation. "I stepped to the door and remained there until it was sold. My recollection as to the sale (not as to the day) is very clear. Euclid L. Johnson was present at the last sale, but left before the property was cried off. Mr. Johnson, in reply to Major Lawson, said he would have nothing to do with the matter."

G. N. Peay gave the deed to the complainant. It was in his possession with a good many unacknowledged deeds.

It only remains to say, there is not any fraud or unfairness on the part of Newton in this transaction. The Bank is attempting to set aside a deed executed by a public officer for fraud, and of course the *onus* is upon her to establish the facts. Lawson had no interest except to collect the money; demanded the money of Johnson, and assured him he would sell it it was not paid. The bidder knew of the second sale and was present, and of course, if there had been injustice, he might have applied by motion to have the sale set aside. He does not object to the sale, nor intimate there had been injustice done to the Bank. We have but little testimony showing what was done further than the deed shows; but this is not the fault of the appellants. The only complaint which can be made against the Sheriff is, that he sold on a day not prescribed by law, and it does not appear whether he did or did not give such notice as was possible, under the circumstances, of the second sale.

**32** CASES IN THE SUPREME COURT

Newton's Heirs et al. vs. State Bank [OCTOBER

So far as Newton is concerned, he bought property at public auction, after proclamation, at the court house door, near the middle of the day, and during the session of the court; and in addition to this was seen a short time before going to the place of sale in company with the Sheriff. This is all the proof.

We understand that in order to affect the purchaser with the Sheriff's irregularities, or to set aside a sale for a gross inadequacy of price, it must appear that the purchaser colluded with the Sheriff, or did some improper act to induce the officer to proceed with the sale, or some act to prevent property from selling at its full value. It surely cannot be said that Newton did either of these.

Let the decree be reversed, the injunction be dissolved, and the bill be dismissed with costs.

Mr. Justice FAIRCHILD did not sit in this case.