St. L., I. M. & S. Ry. v. State, ex rel. Keith.

1. TAXES: *Overdue tax act; Assessment.*
   The legislature had power to provide, as in the overdue tax act of March 12, 1881, for the assessment of lands by a court of equity which had escaped assessment in any year, and to charge the lands with the cost of the assessment.

2. SAME: *Same.*
   The provisions of the overdue tax act of 1881, which requires the court to have the assessment certified to the clerk of the county court, relates only to cases in which the lands were not assessed for the current fiscal year in which the proceedings for their condemnation and sale were instituted.

3. SAME: *Same.*
   When lands were assessed for taxes by order of a court of equity under the overdue tax act of 1881, there must have been a levy of taxes extended on the assessment before the court could condemn and sell them for taxes.

APPEAL from *Hot Spring* Circuit Court in Chancery.
Hon. J. B. WOODS, Circuit Judge.

*Dodge & Johnson* for Appellant.

1.   As these lands were never assessed for taxes, no penalty, costs, attorneys' or printers' fees can be collected or enforced as against them.

The decree in this case, decrees and declares that these lands were never assessed for the year 1875.    That certain penalties and costs, among which are included attorney's, printer's and clerk's fees, to the extent of several thousand dollars, are liens upon these lands, and with the taxes, must be paid within twenty days after the rendition of the decree, or the lands shall be sold. This was error.   *Secs. 1, 8, 9, Acts March 12 and 22, 1881.*

The "overdue tax acts" never did intend or contemplate such a thing.   If they did, they are in violation of *Sec. 8, Art. 2,* and *Sec. 5, Art. 16, Const. Ark.,* and the *5th Amendment to Const. United States.*

This suit must be classed under section 8 of the act.   All that a court of equity could do, was to assess the lands, and have them certified to the county clerk.   Section 9 only applies to lands that had been forfeited for non-payment of taxes.   But where there has been no assessment, the object of the act was to have a legal assessment made, and the land put upon the tax books.   But no penalty or costs could be attached, as the owner was not in default until there had been an assessment and forfeiture for non-payment of taxes.   If no assessment was made neither the owner nor the land was liable for penalty or costs. *Gantt's Dig., secs. 5116, 5117, 2879; Acts 1875, p. 178.*

The costs of assessment of lands are always paid by the state.   *Mansf. Dig., secs. 5663-4.*   If there is no assessment, no taxes can be paid, and it is the duty to provide in some way for an assessment without cost to the owner or penalty on the land.   *Secs. 5134, 5137, 5143, Gantt's Dig;* also *Mansf. Dig., secs. 5699, 5701, 5702, 5709.*

Now, we submit, that if all assessments had to be made at the expense of the state, and section 8 of the overdue tax act

simply provided for an assessment where none had been made, how could the legislature, in view of the inhibition of the constitutional provision above referred to, attach these costs and penalties to the land after the dereliction or neglect of duty on the part of the officer of the state in neglecting to assess the land?

It would be in the nature of a penalty visited upon the land owner because of the state's own default through its duly empowered officers.

Or, more plainly, it would be punishing the land owner for doing that against which there was no law at the time; it would be *ex post facto* in its effects, and clearly violative of all principle of law and fair dealing. See on this subject *23 Ark., 375; 27 Ohio St., 592; 18 S. C., 538; 2 Bradw., 642; 16 Ohio, 532; 11 Minn., 321; 70 Mo., 441; 45 Tex., 317; 58 Ala., 547; 65 Ala., 158.*

No tax is due until it is assessed, and in consequence, the subject of the tax is not in default for non-payment, until the assessment is made. *Nebraska City v. N. C. Gas Light Co., 9 Neb., 339; S. C., 2 N. W. Rep., 872; Miller v. Hale, 26 Pa. St., 432.*

An assessment is so far an inseparable incident to taxation, that no right of action arises until an assessment is made. *State Auditor v. Jackson county, 65 Ala., 142.*

2. The second objection to the decree is that it is contrary to section 8 of the act entitled "An act to enforce the payment of overdue taxes," approved March 12, 1881.

This section makes it the duty of the assessor, after a satisfactory assessment is made, to certify the assessment to the clerk of the county court. *Acts 1881, p. 61; Secs. 5699, 5700, Mansf. Dig.*

3. The decree is erroneous in another respect. The assessment list as returned by the assessor under the order of the

court gives only the values of the lands. The amount of tax is not extended thereon, and no amount is given.

Our view of the whole matter is this: That after the assessment is made under the overdue tax law, and the legal taxes ascertained, then the land owner has until next tax paying day to pay these taxes; and that until he is in default and refuses to pay, no cost, penalty or interest, can be attached to the lands which by some omission, error or neglect, on the part of the former assessor, had never been assessed.

·A. *Curl* for Appellee.

The costs of proceedings under the overdue tax act are to be taxed against the lands. *Act March 12, 1881, Acts 1881, p. 67.* A suit was necessary to ascertain whether these lands were subject to taxation. The appellants contended they were not. The court decided they were, had them assessed, and under the act decreed the taxes to be a lien, and adjudged the costs of the proceeding against the lands. This was proper. *Sec. 1, Acts 1881, p. 64.*

Section 9 expressly authorizes the court to decree the taxes to be a lien, etc. The legislature provided for the taxation of costs, and it had the power to do so.

The decree, in its body, sets out the entire list of lands, the value thereof, and the taxes and costs are extended item by item.

SMITH, J. The present bill was filed while the overdue tax law was in force, to subject certain lands therein described to the payment of taxes for the year 1875. It was alleged that the lands had escaped assessment for that year.

The railway company intervened, setting up its ownership of the lands, and resisted the prayer of the bill, upon the grounds of exemption by its charter and because a patent for

the lands had not then issued from the United States, etc. These defenses need not be more particularly stated, as they have been all abandoned in this court except the following: "That it was not the fault of the company, its agents, servants, or attorneys, that these lands were not assessed by the assessor of Hot Spring county; but that the said assessor failed and neglected to perform his duty in the premises, for which this defendant is in nowise to blame; and it therefore says that no penalty or costs in this proceeding in the matter of assessing said lands can attach to or be levied upon or collected from said lands; and it says that if it is held that the said lands can be assessed, then this defendant is willing to pay such taxes as may be found due in accordance with law."

The cause having been heard on the pleadings and depositions the court ordered the county assessor to assess the lands, approved his assessment, and declared the taxes for the year in question, ascertained according to the rates levied for that year, a lien upon the lands. A commissioner was appointed to advertise and make sale of the lands, upon default in payment of taxes and costs by a given day, and certain fees were allowed to the clerk, printer, commissioner and attorneys for the plaintiff. These fees are not alleged to be excessive in amount, and the only controversy is whether they are properly chargeable on the lands.

The argument is, that until an assessment was had the owner was not in default, no taxes being due; and that until after default, no penalty, nor costs, could be visited upon him. The reasoning is sound, upon the question of penalties. But upon inspection of the decree, we fail to discover that anything in the nature of a penalty, or augmentation of the taxes, for not paying sooner, is denounced against the lands or the owner of them. Then, as to costs, it is urged that it has always been the policy of our revenue laws to make the assessment at the expense of the county in which the land lies, and never to charge the costs thereof against the lands, even where the

owner is delinquent; and that if the county officers had done their duty in the present instance, by placing these lands upon the tax books, the railroad company could have paid its legitimate taxes without being burdened with fees to officers of the court.

But the omission of taxing officers to assess certain property in previous years can not control the power of the legislature.  *Vicksburg, etc., R. Co. v. Dennis, 116 U. S., 665.*

1. Over-due Tax Act: Assessment.

The *Act of March 12, 1881, secs. 1 and 8*, provides for two distinct classes of cases:  First, where land has been assessed, but by reason of the invalidity of the assessment, or other cause, has escaped the payment of taxes; and, second, where the land, though legally liable to taxation, has for any reason not been assessed.  The amount of the taxes is to be ascertained, and the state's lien therefor is to be enforced, in a court of equity, due provision being made for the owner to come in and defend. And if it is adjudged that taxes are due, the costs of the proceeding are saddled upon the land.

2. Same.

It is further contended that all the court should have done in this case was to cause the lands to be properly assessed and certified to the clerk of the county court, to the end that the assessment should be carried to the tax books for the current year, and the back taxes collected in the same manner as other taxes.  Counsel for the state seems to concede that such is the proper construction of *Section 8*, which provides:  "If the lands shall not be on the assessment list for the current fiscal year, the order shall also require the assessor to assess the lands for such current year, which assessment shall stand as the valid assessment of such lands until the next regular county assessment shall have been made;  .  .  .  and when such assessment shall have been made to the satisfaction of the court, the court shall order the same to be entered on its records, and a copy thereof to be certified to the clerk of the county court, who shall forthwith place said assessment on the assessment and tax books of the county."

We understand this provision to relate only to the case where the lands have not been assessed for the current fiscal year. There is nothing in the record to indicate that this state of facts exists here. On the contrary, as the taxes of 1875 are alone in controversy, the fair inference is, that the lands have been assessed and the taxes paid for each subsequent year.

But suppose that at the date of bill filed, or decree rendered, the lands did not appear on the assessor's list, the court was not required to stay its hand, but its plain duty, under *Section 9*, was to proceed to a final decree and to the execution of that decree. After the institution of the suit, and a judicial ascertainment that taxes were in arrears, the court would not loose its hold until those taxes were paid, or the lands sold. The purpose in requiring the assessment to be certified to the clerk, was to get the lands upon the tax books with a view to taxation for the current and future years, and not to suspend the pending proceeding for the collection of back taxes.

The last objection that we shall notice is, that the decree is 3. Same.. defective in this, that while the assessor's return shows the valuation placed upon each tract, no levy of taxes is extended thereon, and the owner cannot ascertain the amount of taxes due from the decree, and the commissioner is left to his own judgment to fix the several sums. This objection appears to be well founded. We have looked through the record without being able even to determine what rates of taxation were levied in 1875 for state, county and school purposes. This is a matter about which no uncertainty should exist.

The decree is reversed and cause remanded, with directions that it be referred to the clerk, or some other proper person, to extend the taxes upon each tract, according to the assessor's valuation, upon the basis of the rates levied for the year 1875, and to enter a decree of condemnation in accordance therewith.