HOBBS *v.* LENON.

4-3923

Opinion delivered September 23, 1935.

*Horace Chamberlin,* for appellants.

*John A. Sherrill* and *Cockrill, Armistead & Rector,* for appellees.

JAMES D. SHAVER, Special Justice. This is an action in ejectment by appellants against appellees in the Pulaski Circuit Court to recover certain real estate situated in Pulaski County, Arkansas. Both parties deraign title from a common source. This cause was heard by the trial court upon demurrer by defendants to plaintiffs' complaint and amendments thereto, and the various exhibits attached and made part thereof. Defendants' demurrer was sustained, and, plaintiffs refusing to plead further, judgment was rendered for defendants from which is this appeal.

. The history of the devolution of said title is substantially as follows:

James B. Keatts, who was the owner of the land involved, on September 1, 1837, mortgaged the same to the Real Estate Bank of Arkansas to secure his bond to said bank for the sum of $20,500, given for 205 shares of stock in said bank. This bond was made due and payable October 26, 1861. In January, 1861, the Legislature passed act No. 112, approved January 16, 1861, to take effect October 26, 1861. This act gave authority to the State of Arkansas to institute suit in the Pulaski County Chancery Court to foreclose mortgages given to the Real Estate Bank then held by the State of Arkansas. Said act provided the procedure to be followed in the prosecution of said suits. On November 25, 1867, the State brought suit in the Pulaski County Chancery Court under said act to foreclose the Keatts mortgage.

The act expressly provided that the suit should be against the specific lands covered by the mortgage, and that no person should be made defendant, and that constructive service should be obtained by publication of notice to all persons to appear and make known to the court any claim or interest they might have in or to said lands. James B. Keatts appeared before said court and demurred to the bill filed by the State, which demurrer was overruled by the court. Thereafter neither Keatts nor any other person made any claim to said land during the pendency of said suit.

The mortgagor, James B. Keatts, died July 7, 1873, testate, and by the terms of his will the land involved was devised to his niece, Helen Hobbs, for life with remainder over to her surviving children. It is under said will that plaintiffs claim title as the surviving children of Helen Hobbs, who deceased October 10, 1934. On April 25, 1879, a final decree was rendered in the State's foreclosure suit wherein it was decreed that there was due on said bond the sum of $18,005.14, plus 6 per cent. interest thereon from October 1, 1870, and said land was condemned and ordered sold in satisfaction of said indebtedness. Sale was fixed by the court to be had September 15, 1879. Sale was had on said date, the State bidding $26,444 therefor. Sale was approved September 17, 1879. On August 7, 1880, the State, by its deed of that date, conveyed this land to George H. Meade for the sum of $11,856. Appellees claim title by subsequent conveyances of George Meade's grantees.

On September 20, 1874, Helen Hobbs executed her deed of trust to George Dodge, as trustee, for George H. Meade, including this land and other lands, to secure to George H. Meade a debt of $3,763.35, and on September 12, 1878, George Dodge, as such trustee, sold to George H. Meade, under the terms of the deed of trust, all the lands therein included. Afterwards, in an action of ejectment brought by George H. Meade against Helen Hobbs, the court in said action cancelled said trustee's deed and held it void and of no effect. Afterwards, under a compromise agreement between George H. Meade and Helen Hobbs, she executed to him, on December 12,

1882, her deed to the land involved and delivered possession thereof to him, which he and his successors in title have held ever since. George H. Meade died testate, and his will was probated August 31, 1890. By the terms of said will, the land involved was devised to his sister, Kate A. Meade, Mrs. Harriet S. Newton and Mrs. H. W. Meade, his mother. By a chain of conveyances from these devisees and their subsequent grantees, all the title George H. Meade had in and to said land passed to appellees.

It is contended on the part of appellants that, under the terms of the James B. Keatts will, Helen Hobbs became the life tenant of said land, and her children became the contingent remaindermen, and that appellants, as such remaindermen, had no right of entry until the termination of the life tenancy of Helen Hobbs. That the life tenant and those holding under her as such should be treated and held accountable as involuntary constructive trustees, and, while so holding, could not purchase the outstanding title to said land and thereby deprive the remaindermen of all rights and title to the land; that such an acquisition of the title by the holder of the life tenancy would be a violation of such trust relation, and that such acquisition by the holder of the life tenancy should be treated as a redemption for the benefit of the remaindermen. This contention is predicated upon the assumption that Helen Hobbs acquired a life estate in the mortgaged land under the terms of the James B. Keatts will, and that her life estate continued until her death, and that she conveyed her life estate to George H. Meade and that George H. Meade, while holding as such life tenant, purchased said land from the State of Arkansas, and that he and those claiming under him, including appellees, have held said lands continuously as such life tenants until the death of Helen Hobbs, October 10, 1934, at which time all rights of appellees as such holders of the life estate of Helen Hobbs ceased.

It is further contended by appellants that the foreclosure decree in favor of the State is void because the

Pulaski County Chancery Court was without jurisdiction; this upon the ground, first, that the act of January 16, 1861, was unconstitutional in that the Legislature had no power to enact said statute; second, that James B. Keatts, the mortgagor, died prior to the rendition of said decree, and that said cause was not revived in the name of the legatees, and for that reason the court had no jurisdiction to render said decree or approve said sale. The attack made upon said foreclosure decree and the proceedings had therein is a collateral attack.

It has been the long and well-settled rule in this State that where the record shows that a court of superior jurisdiction has jurisdiction of the subject-matter and of the person, such judgment or decree cannot be attacked collaterally, but only by some direct proceeding in the court rendering the judgment or decree, or under the provision of § 6290 of Crawford & Moses' Digest. In the case of *Lambie* v. *W. T. Rawleigh Company*, 178 Ark. 1019, 14 S. W. (2d) 245, we said: "If the judgment or decree is void upon the face of the record itself, it may be attacked collaterally; but, if its invalidity is not apparent on the face of the record, it cannot be attacked collaterally. Again in the recent case of *Turley* v. *Owen*, 188 Ark. 1069, 69 S. W. (2d) 882, in which the authorities were reviewed as to the right of collateral attack upon judgments and decrees, we there reaffirmed the rule announced in the Lambie case, *supra*. The above rule is so firmly established in this State, we do not deem it necessary to cite the numerous decisions of the court approving the rule.

In the State's foreclosure suit against the mortgaged land, the only subject-matter there involved was the specific mortgaged land and the application of the land to the payment of the debt secured thereby, an action strictly *in rem*. The Pulaski County Chancery Court was, by the act of January 16, 1861, vested with jurisdiction of suits for that purpose. The mortgaged land was made the subject-matter involved. No person could be made defendant. Constructive service by publication was the only service required or contemplated by the

act. The record here shows the provisions of the act were followed in said proceedings giving the chancery court jurisdiction over the mortgaged land. And, having acquired jurisdicition of the subject-matter, its decree therefore would not be subject to collateral attack.

It is equally well settled that judgments and decrees entered upon constructive service by publication will be given the same favorable presumption as judgments and decrees upon personal service. *Crittenden Lbr. Co.* v. *McDougal,* 101 Ark. 390, 142 S. W. 836; *Price* v. *Guinn,* 114 Ark. 551, 170 S. W. 247; *State ex rel. Attorney General* v. *Wilson,* 181 Ark. 690, 27 S. W. (2d) 106, as was held by us in the Turley case, *supra,* that the rigor of the rule is not modified or impaired because the proceeding was one *in rem* and not *in personam.*

As a further reason why the foreclosure proceedings and decree in the case of the State against the mortgaged land rendered in the Pulaski County Chancery Court, April 25, 1879, should not be disturbed is: That in 1872, the case of *McCreary* v. *State,* 27 Ark. 425, was before this court, in which the validity and constitutionality of the act of January 16, 1861, was directly called in question in a foreclosure proceeding of a similar mortgage then held by the State. Elaborate briefs were filed by both appellants and appellees, and, upon a thorough consideration of the validity of the act, the court sustained the same generally. In the opinion rendered, the court held (we quote from the first headnote) : ''The act of the Legislature of January 16, 1861, entitled 'An act to aid the foreclosure of the stock mortgages, given to secure the stock subscription to the Real Estate Bank of the State of Arkansas,' was intended to furnish a remedy different from that which existed when the obligations were entered into, and, although it changed the remedy affecting the enforcement of existing obligations by abridging the pleadings, simplifying the issues and regulating the mode and manner of the proceeding, yet it did not impair the obligation of contracts, or infringe upon the existing rights of the parties, and is in none of its provisions or requirements unconstitutional.'' This

decision has stood for more than fifty years without modification or change. Doubtless, many persons throughout the State have acquired property, the title to which is based upon the faith and credit of said decision. Some twenty years after the decision in the McCreary case was rendered, a similar case was again before this court: *Duke* v. *State,* 56 Ark. 485, 20 S. W. 600. In this case the validity of the act of January 16, 1861, was again called in question. MANSFIELD, J., speaking for the court said: "The suit was brought and prosecuted in the manner provided by the act of 1861. The constitutionality of that statute was questioned generally in *McCreary* v. *State,* 27 Ark. 425, and it was there held to be a valid enactment. The proceeding it authorized is *in rem,* and the jurisdiction it exercised under it, and the process by which that jurisdiction is acquired, have been upheld so often by this court in similar cases that it is sufficient now to cite the decisions in which they have been sustained," citing *St. Louis, etc., Ry.* v. *State,* 47 Ark. 323, 1 S. W. 556; *Williams* v. *Ewing,* 31 Ark. 229; *Williamson* v. *Mimms,* 49 Ark. 336, 5 S. W. 320; *McCarter* v. *Neil,* 50 Ark. 188, 6 S. W. 731; *Doyle* v. *Martin,* 55 Ark. 37, 17 S. W. 346; *Gregory* v. *Bartlett,* 55 Ark. 33, 17 S. W. 344; *McLain* v. *Duncan,* 57 Ark. 49, 20 S. W. 597; *Scott* v. *Pleasants,* 21 Ark. 364; *McLaughlin* v. *McCrory,* 55 Ark. 442, 18 S. W. 762; *Worthen* v. *Ratcliffe,* 42 Ark. 330. See also *Parks* v. *Overman,* 18 How. 137; *Pennoyer* v. *Neff,* 95 U. S. 727; *Boswell's Lessee* v. *Otis,* 9 How. 384."

Furthermore, it is the long established rule or doctrine of this court that cases like the McCreary and Duke cases, *supra,* where the construction of the Constitution or statutes involve rights and titles to property, such decisions become and have the force of rules of property; and where persons have acquired property upon the faith and credit of such decisions and especially after the lapse of many years, such decisions and the rights acquired thereunder should not be disturbed. *Newton Heirs* v. *State Bank,* 22 Ark. 19; *Taliaferro* v. *Burnett,* 47 Ark. 350, 1 S. W. 702; *Apel* v. *Kelsey,* 52 Ark. 341, 12 S. W. 703; *Townsend* v. *Martin,* 55 Ark. 192, 17 S. W. 875; *Cooper* v. *Freeman Lbr. Co.,* 61 Ark. 42, 31 S. W. 981; *Pitcock* v.

*State,* 91 Ark. 539, 121 S. W. 742; *Burel* v. *Grand Lodge I. O. O. F.,* 163 Ark. 131, 259 S. W. 369. In the Townsend case, *supra,* C. J. COCKRILL said: "It is a familiar rule of courts that it is more important that such questions should be finally settled than how settled." In the Pitcock case, 91 Ark. 539, C. J. McCULLOCH said: "A decree which becomes a rule of property should not be reversed whether right or wrong." In the Burel case, 163 Ark. 131, 259 S. W. 369, C. J. McCULLOCH said: "Where a decree has become a rule of property, it will not be disturbed, even if the court were otherwise disposed to do so." We are of the opinion that the decisions in the McCreary and Duke cases, *supra,* have become rules of property and should not be disturbed.

As we have determined that the State's foreclosure decree is not subject to collateral attack, and that said decree is valid and binding, what then is there upon which to predicate any trust relation between appellants and appellees? It is fundamental that heirs and devisees take only such rights as the intestate or testator had in the property at the time of his decease. The debts of the deceased must be paid before the distributees, be they heirs or legatees, receive anything. The rights of heirs or distributees can never be greater or rise above the rights of the intestate or testator. In the case of *Planters' Mutual Insurance Association* v. *Harris,* 96 Ark. 222, 131 S. W. 947, we held that one's property at his death becomes charged with the payment of all his debts. And a testator cannot by will relieve the land or other property from liability for his debts. The property devised to appellants stood charged with the specific debt of James B. Keatts, which was superior to the rights of the devisees. All of the land so devised to Helen Hobbs and these appellants was taken by judicial process by a court clothed with jurisdiction by statute so to do, and by final decree it caused the same to be sold in satisfaction of said specific debt, that, upon a sale under said decree of all the title that the testator, James B. Keatts, had in said land (the State being the purchaser), the entire and full title thereto pass to and become vested in the State of Arkansas. The devisees' rights under the will

were conditional and prospective, depending upon the rights of the specific lienor to have the entire devised land applied to the payment of the debt so charged against it by appellants' testator. When such resulted under the foreclosure decree and sale, there was nothing left for the devisees, and all their rights were completely cut off and terminated, as much so as if the life tenancy had terminated upon the death of the life tenant. Therefore after the foreclosure decree and sale thereunder to the State in September, 1879, the life estate of Helen Hobbs in and to said land ceased and was thereby terminated. Any conveyance of said life estate by Helen Hobbs theretofore made, by deed of trust or otherwise, would not be binding or effective after the expiration of the life estate. And all rights of such transferees would fail upon the termination of the life estate. After the termination of the life estate, George H. Meade, under his deed of trust from Helen Hobbs, held no legal claim against the land and could sustain no right thereto by reason of said deed of trust. There was a complete failure of title by reason of the fact that the very title conveyed by the trust deed had terminated, and there was nothing for the trustee to take under the deed of trust. The deed Helen Hobbs executed to George H. Meade, December 12, 1882, was some three years after her life estate had terminated. Therefore George H. Meade took nothing thereby as she had no title to convey. We find nothing in the record here to justify the assumption that George H. Meade and his successors in title have all these years held said lands as tenants for life from Helen Hobbs, and as such holders are liable to appellants as involuntary trustees. With this contention we cannot agree; the same is denied and overruled.

It is further contended by appellants that the sale to the State is void for the reason said foreclosure suit was not revived in the names of the legatees under the will, and that they have never had a day in court. We cannot agree with appellants in this contention. The suit by the State was an action *in rem* to condemn and subject the specific mortgaged land to the payment of the mortgage debt. The act specifically prohibited any

person being made a party defendant, not even the mortgagor. The style of the suit should be the State against the particular land, nor should there be any change in the style, nor any abatement or suspension of the suit or change in the proceedings on account of the death, marriages, infancies, arrivals of age, or other incidents affecting persons interested in the lands or claiming them; but the suit should go on to consideration, hearing and decree, without the delays and revivors that grow out of the change of parties to suits in chancery under the common practice.

Under the provisions of this act the mortgagor was not a necessary party to the suit. The act prohibited any person being made defendant. It was a suit against the land. There being no person a defendant, there could not well be revivors to succeed a person not a defendant. The act itself prohibited a revivor as in ordinary cases. This question is concluded by the decisions in the McCreary and Duke cases cited *supra,* where we held the procedure authorized by the act was constitutional and within the power of the Legislature to enact.

The record in this case discloses a further reason why the foreclosure decree by the State in 1879 should be held binding and conclusive against appellants; and that reason is based upon the doctrine of *lis pendens.* The record here shows that the devise to appellants was made during the pendency of the foreclosure suit against the lands devised. The general rule is that whoever acquires the subject-matter of the suit *pendente lite* takes subject to the decree or judgment which may be rendered in such suit. This rule has been enunciated and recognized in a multitude of cases from nearly every jurisdiction, both Federal and State, 17 R. C. L., § 1009. It is further laid down as fundamental that a judgment *in rem* binds all the world irrespective of whether the persons bound are or not parties to the litigation. The theory upon which a judgment *in rem* is regarded as a judgment binding upon all the world is that all the world has constructive notice of the seizure, with the cause and purpose of the taking by the court of the control of the

*res*, and has notice thereby of the time and place at which any person may appear before a competent tribunal and have a trial, before condemnation of his property, 15 R. C. L., § 84, p. 641. In the strictest sense of the term, a proceeding *in rem* is one which is taken directly against property or which is brought to enforce a *jus in rem*. The distinguishing characteristic of judgments *in rem* is that they operate directly on the property and are binding upon all persons, or, as sometimes said, upon the whole world, 15 R. C. L., § 72, p. 629. It follows from the general rule that a person who acquires the property *pendente lite* takes subject to the court's adjudication of the rights in the property which is the subject-matter of litigation; such persons will be bound whether a party to the litigation or not. Parties, their privies, and purchasers *pendente lite* are all grouped together as bound by the court's decision, 17 R. C. L., § 28, p. 1031. Also to same effect, 2 Pomeroy's Equity Jurisprudence, 3d ed., pp. 632-635. The rule as above stated has been recognized and followed by this court from its early days to the present time, as the following citations well show: *Whiting* v. *Beebe,* 12 Ark. 564-566; *Holman* .v *Patterson's Heirs,* 29 Ark. 358; *Montgomery* v. *Birge,* 31 Ark. 491; *Hale* v. *Warner,* 36 Ark. 217; *Ritchie* v. *Johnson,* 50 Ark. 551, 8 S. W. 942; *Brown* v. *Bocquin,* 57 Ark. 107, 20 S. W. 813; *Burleson* v. *McDermott,* 57 Ark. 229, 21 S. W. 222; *Boynton* v. *Chicago Mill & Lbr. Co.,* 84 Ark. 214, 105 S. W. 77; *Hudgins* v. *Schultice,* 118 Ark. 144, 175 S. W. 526; *Causey* v. *Wolf,* 135 Ark. 17, 204 S. W. 977; *Bailey* v. *Ford,* 132 Ark. 203, 200 S. W. 797; *Cherry* v. *Dickerson,* 128 Ark. 572, 194 S. W. 690; *Champion* v. *Williams,* 165 Ark. 328, 264 S. W. 972; *Collum* v. *Hervey,* 176 Ark. 714-721, 3 S. W. (2d) 993; *Turley* v. *Owen,* 188 Ark. 1072, 69 S. W. (2d) 882.

The State's foreclosure suit was strictly an action *in rem* against the specific mortgaged land, the subject-matter involved in said suit. James B. Keatts by his will dated July 23, 1872, while the State's foreclosure suit was pending, bequeathed the mortgaged lands to Helen Hobbs for life with remainder over to appellants. This

bequest was taken, and could only be taken, under the law, subject to the State's *lis pendens* lien. Therefore if, upon the final decree and sale thereunder, all of said mortgaged land was sold in satisfaction of the mortgage, then there was nothing left of said bequest for the devisees to take, their entire right and title to said land was extinguished, and the full title vested in the State by reason of said decree and sale; and the title attempted to be transferred to the devisees by their testator's will was entirely extinguished and ceased to exist as a valid claim of title to said land. For the reasons herein stated, we are of the opinion that appellants are without right or title to the land herein involved; that the decision of the trial court was correct, and should be affirmed. It is so ordered.

BUTLER, J., disqualified, and not participating.