McLAIN v. DUNCAN.

Opinion delivered December 3, 1892.

1. *Internal improvement land—Filing evidence of debt.*

Under the act of March 30, 1887, relating to internal improve-
ment and other State lands, which provides that the officer
having the custody of any notes or other record evidences of
indebtedness therefor, shall deliver them to the Attorney Gen-
eral, who is required to institute suit to enforce the State's lien,
*held*, that where a note sued on is lost, the Attorney General is
required to aver and prove such loss merely, and need not file,
with his complaint, any record evidence of such loss that he
may possess.

2. *Judgment upon constructive service—Recital of notice.*

A decree in a proceeding by constructive service which recites
that notice was given as required by the statute, without
specifying how the notice was given, is valid against collat-
eral attack; the law does not require the evidence of publica-
tion to be made a part of the record, either by entering it
at large on the record or by filing it.

3. *Validity of judgment—Insufficient evidence.*

Failure of the court to require sufficient evidence of the amount
due before rendering judgment for the sum sued for is not a
jurisdictional error, and can not be cured after lapse of the
term.

4. *Practice—Proceeding in rem.*

A suit, under the act of March 30, 1887, to enforce the State's
lien upon internal improvement land, instituted upon con-
structive service, is a proceeding *in rem;* where a judgment
has been rendered against the land, a claimant of the land
who failed to appear at the return term is not a "defendant,"
within the provisions of secs. 3909 and 5195, Mansf. Dig., and
is not entitled to appear at a subsequent term of the court and
defend the suit.

5. *Judicial sale—Inadequacy of price.*

In a proceeding *in rem* by the State to foreclose its lien for pur-
chase money of land, one who claims the land through the State's
vendee cannot complain that the land was sold to another for
an inadequate price if there is no evidence that on a re-sale the
land would bring more than the purchase money due the State.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

Originally, this suit was brought in August, 1887, by the State against a tract of land situated in St. Francis county, under an act approved March 26, 1885, and the act of March 30, 1887, supplemental thereto. The land belonged to the class known as "internal improvement land," and the bill recited that the land had been sold by the State to A. J. Parker in 1858 ; that the purchase money had never been paid, and that the note given therefor had been lost. The complaint prayed that the State's lien be foreclosed, and the land sold to satisfy that lien. An order was entered in the cause, stating the general objects of the bill and warning all claimants of the land to appear and defend against the complaint. An affidavit appears in the transcript, showing that a copy of this order was published for the required length of time in a paper printed in St. Francis county. No affidavit appears, showing its publication in a newspaper printed in Little Rock. At the October term, 1887, a decree was entered in the cause, which recited that publication, as required by the statute, had been made of the warning order ; that no one appeared to defend or intervene against the claim of title by plaintiff, and that it further appeared that there was due and owing to the State of Arkansas the sum named in the complaint. It was therefore decreed that the State's lien be foreclosed ; and for this purpose a commissioner was appointed to sell the land. At the following April term of the court the commissioner reported that he had sold the land, and that Elijah Duncan had bought it. Thereupon the court entered an order confirming the report. On the same day the commissioner produced to the court a deed to Duncan, which, upon examination, was approved by the court. At a subsequent day of the

same term, Hannibal McLain filed a petition to set aside the decree. He alleged that he was owner of the land; that he had no knowledge of the pendency of the suit until his land had been sold; and that the decree was obtained without any evidence that the purchase money was unpaid. He asked that he be allowed to defend against the original action, and tendered with his petition an answer which averred that the purchase money for the land had been paid to the State, and alleged that, if it were not so, the State's claim was stale.

Thereupon the court entered an order reciting the filing of the petition, and that there was reasonable ground to believe that the purchase money had been paid; and directing that the sale should be set aside until further order of the court. The court thereupon made E. Duncan party plaintiff to the action. Without a formal order to that effect the cause seems thereafter to have progressed as if Duncan were plaintiff and McLain defendant.

Evidence was introduced by both parties from which the court found that the purchase money originally due for the land from A. J. Parker to the State had never been paid; that McLain's title was derived through a tax sale of the land made at a time when the land was not liable to sale for taxes, and that he was not such a party in interest in the land as to allow him to set up any irregularities in the sale to Duncan. The sale to Duncan was therefore confirmed. McLain has prosecuted an appeal.

*J. M. Moore* and *Sanders & Watkins* for appellant.

1. The act of March 26th, 1885, and the supplemental act of March 30th, 1887, are acts confirming special jurisdiction, and must be literally complied with and strictly construed. In view of these acts, unless there is a note or some record evidence of indebtedness,

the Attorney General had no authority to begin the suit. There was no effort to supply proof of the loss of the note. 51 Ark. 39.

2. All jurisdictional facts should appear of record affirmatively. Freeman on Judgm. Secs. 123, 125. It is not shown that the notice was published in Pulaski county.

3. No proof was taken to show the amount due on the note, or that it was lost. Sec. 5189, Mansf. Dig.; act March 30th, 1887; Acts 1889, p. 120.

*W. G. Weatherford* for appellee.

1. The decree was rendered at the preceding term of the court, and had passed beyond the control of the court. Mansf. Dig. sec. 3909; 33 Ark. 454; 52 *id.* 316; 41 Ark. 104.

2. It had not been adjudged that there was a valid defense to the action. Mansf. Dig. secs. 3912–13.

3. This was not an action *in personam*, but *in rem*, and the decree was *final.* 16 Ark. 671; 13 *id.* 291; 53 *id.* 421. The proceeding is analogous to that for confirmation of tax titles. Mansf. Dig. sec. 576; 42 Ark. 344; 52 *id.* 400.

4. The judgment is not open to attack—its recitals as to notice, etc., are conclusive. 47 Ark. 419; 44 *id.* 269; 49 *id.* 413; 50 *id.* 340; 42 *id.* 314; 39 *id.* 339; 53 *id.* 478. The order rescinding the confirmation was therefore erroneous, if not void.

MANSFIELD, J. The jurisdiction of the court to render the judgment under which the land was sold is denied on two grounds:

1. As to filing evidence of debt.

1. It is contended that the proceeding against the land was without legal authority, because, as shown by the complaint filed by the Attorney General, the note given for the purchase money was not in his possession when the action was brought; and it is argued that the

possession of the note and its exhibition with the State's pleading were essential to the exercise of the power conferred by the act of 1887 under which the proceeding was had. In support of this position, a section of the act is cited which provides that the officer having the custody of any notes or other evidence of indebtedness for internal improvement lands shall deliver them to the Attorney General, who is required to institute actions to enforce the State's lien.

The complaint of the State excuses the failure to file the note by alleging its loss. As the loss of the note could not extinguish the debt it represented, it would be a most unreasonable construction to attribute to the statute an intention to release or waive the State's lien as vendor of the lands in all cases where the notes for the purchase money had been lost or destroyed. It was evidently the purpose of the act to effect a collection of all debts due for lands of the class to which the tract here involved belongs. If the note of a vendee was lost, it could not of course be delivered to the Attorney General or produced in court. But in such case the statute imposes upon the State only the burden which, under similar circumstances, other vendors must take upon themselves of proving the alleged loss. The clause of the act in which record evidence of indebtedness is spoken of seems to apply to debts evidenced otherwise than by notes. However that may be, if there was record evidence competent to prove the loss of the note in this case, it was not necessary, as insisted by appellant, to file it with the complaint.

2. The second point made by the appellant on the question of jurisdiction is that the decree is invalid because it fails to show that the notice required by the act of 1887 was published in the manner the statute prescribes—that is, by four successive weekly insertions in a newspaper printed in Little Rock and also in a news-

2. Recital of notice in judgment conclusive.

paper printed in St. Francis county, where the lands are situated. It is certainly true that the court could acquire no jurisdiction to adjudge a sale of the land without a proper publication of the notice. *McCarter* v. *Neil*, 50 Ark. 191; *Gregory* v. *Bartlett*, 55 Ark. 30. But the law did not require the evidence of publication to be made a part of the record either by entering it there or by filing it. This being so, the recitals of the decree as to the notice are conclusive; and these declare that it was given in the manner required by the statute. We find in the transcript an affidavit proving the publication of the notice in the county of St. Francis; and as no other affidavit is found, this, it is said, is sufficient to show that no publication was made in Little Rock. Neither the decree nor any order of the court identifies the affidavit referred to as part of the proof of publication on which the court proceeded. But treating it as the evidence adduced to show a publication in St. Francis county, there is nothing to indicate that proper evidence was not also produced to show that the necessary publication was made in the city of Little Rock. The mere absence of an affidavit as to the latter publication cannot be allowed to overcome the presumption, arising from the recitals of the decree, that the court's finding as to the notice was made upon sufficient and competent evidence. *Boyd* v. *Roane*, 49 Ark. 413.

3. Judgment on insufficient proof valid collaterally.

3. But it is said that no proof was taken as to the amount of purchase money due on the land; and that in this respect the judgment was not only prohibited by the general statute regulating proceedings against defendants constructively summoned, but was contrary as well to the special act under which the suit was brought. This position, however, is also met by a recital of the original decree, which states a finding of the amount due to the State in language that at least raises a presumption that proof of some kind was adduced. *Boyd* v.

*Roane*, 49 Ark. 412, 413. And this presumption cannot be rebutted by the recital found in the proceedings of a subsequent term. But if it be conceded that the decree was rendered without proof as to the amount of the debt, this was only an error in the exercise of jurisdiction; and however gross and injurious to the plaintiff it may be regarded, it did not affect the validity of the decree, and the court was without power to correct it by vacating the judgment after the lapse of the term, unless this could be done under some general provision of the code. For it is not contended that any such power was given by the act of 1887.

It is assumed that the second paragraph of section 3909 and section 5195 of Mansf. Digest both apply to the present case; and that the appellant was entitled to interpose a defense to the original suit on giving security for costs. The section first mentioned provides that the court in which a judgment has been rendered shall have power, after the expiration of the term, to vacate or modify it by granting a new trial when the proceeding is against a defendant constructively summoned. (Mansf. Dig. sec. 3909, par. 2). And section 5195 provides that where a judgment has been rendered against a defendant thus summoned and who did not appear, he may, at any time within two years after the rendition of the judgment, appear in open court and move to have the action re-tried; and that, security for the costs being given, such defendant shall be admitted to make defense, and thereupon the action shall be tried anew as to such defendant as if there had been no judgment. If the appellant was a defendant .to the original suit, within the meaning of these provisions, then it was his right to have a new trial on the terms imposed by the statute. *Porter* v. *Hanson,* 36 Ark. 591, 599. It appears that a re-trial was in fact had upon his application; and the record does not disclose that on such re-trial any proof

4. Practice in proceedings *in rem.*

whatever was adduced sustaining the allegation made in the complaint as to the loss of the note. This allegation was material, and, in the absence of any proof that it was true, the decree should not have been permitted to stand if the court had power to vacate it. But if the re-trial was unwarranted by the law, the error thus committed is of no avail on this appeal; for in that case the State was not called upon to maintain the correctness of the decree, and it could not be impeached by the application to set aside the sale. *Johnson* v. *Campbell*, 52 Ark. 316.

Conceding that the appellant showed such interest in the land as entitled him to resist the confirmation of the sale, the standing in court accorded to him for that purpose did not make him a party to the original action; and unless he became such party, his appeal does not bring before us for correction the proceedings resulting in the decree of foreclosure, and we can only inquire whether the court erred in approving the sale. *Arnett* v. *McCain*, 47 Ark. 411; *Johnson* v. *Campbell*, 52 Ark. 316. It is true that section 3 of the act of 1887, referring to the action provided for in the preceding sections, declares that the right of appeal shall exist in favor of any "party" thereto. But the first section provides that it shall not be necessary to make any person a defendant, and that the suit shall proceed as in actions *in rem*; and a simple reading of the whole act makes it plain that the "party" to the suit referred to in the third section is one who appears and actually becomes a party for the purpose of defending before a decree is entered and at the term to which process by publication is made returnable. There is no contention that the complaint of the appellant states facts sufficient to warrant relief as upon a bill in equity to review the decree obtained by the State. And whether that decree may be reviewed on this record is a question to be resolved, as already stated,

by determining whether the general provisions of the code cited above apply to a judgment rendered, as this was, in a proceeding essentially, if not strictly, *in rem*. All persons, it is said, are by construction of law parties to such a proceeding. *McCarter* v. *Neil*, 50 Ark. 191; *Mitchell* v. *Chambers*, 43 Mich. 159. This is because they are presumed to have notice and are concluded by the judgment. Waples, Pro. in Rem, secs. 626, 627. But in the provisions cited we think the code has used the term "defendant" in a more limited sense and as meaning one who is a party to an action personally against him in the style of the suit—whether it looks to a personal judgment or not. In this sense proceedings against unknown heirs and unknown owners of property to be divided or disposed of are personal; and as a general description of the persons thus made defendants is given by stating the relation they sustain to a decedent or to certain property, they are defendants within the meaning of the code although their names, because of being unknown, are not required to be used in the title or pleadings of the action. But where the proceeding is against property only, and that is named as the sole defendant, we think a party interested in the property is not to be treated as a defendant within the contemplation of the code, and that its provisions as to persons constructively summoned do not apply. The nature of the provisions referred to is such as to show that they all apply to the same class of persons; and the application of some of them to cases like this would be found to be impracticable. Thus it is provided that, before judgment is rendered against a defendant constructively summoned and who has not appeared, it shall be necessary: First, that an attorney be appointed to defend for him and to inform him of the action and of such other matters as may be useful to him in preparing for his defense; secondly, that a bond be executed "to such

defendant " by sufficient sureties and to the effect that
if the defendant within the period prescribed by law
shall appear, make defense and set aside the judgment,
the plaintiff shall restore to him the property taken there-
under, the restoration of which may be adjudged,
and pay to the defendant such sums of money as the
court may award him.    Mansf. Dig. sec 5190.    The
language and purpose of other provisions are equally
unfavorable to a construction making them applicable to
proceedings to which no one is in any form made a party
defendant.    Mansf. Dig. secs. 4991, 4993, 5195, 5196,
5199, 5200.

At the time of the adoption of the code in 1868,
statutes were in force in this State providing for the
exercise of a jurisdiction not unlike that conferred
by the act of 1887 and by proceedings of a like sum-
mary and special character.    Of this nature is the act
for the confirmation of tax titles, which was part of
the Revised Statutes adopted in 1837 ; also the act
of 1861 providing for the foreclosure of stock mort-
gages to the Real Estate Bank.    Mansf. Dig. chap. 22 ;
Acts of 1861, p. 235.    Similar proceedings were also
provided for by the act known as the over-due tax
law, passed in 1881.    Numerous cases arising under
all these statutes have been adjudged here, and no pro-
ceeding in any of them has been questioned because of
its failure to conform to the provisions of the code as to
defendants constructively summoned.    Nor is there, in
the reports of such cases, any intimation that a person
interested in the property affected might have a re-trial
after the expiration of the term at which the judgment
was rendered, upon the ground that he was a defendant
constructively summoned.    In the absence of any pro-
vision or language to the contrary, in the act of 1887,
it may be presumed, we think, that the legislature
intended that the practice under that act should be the

same that had been observed under previous and similar statutes.

The code of Iowa contains a section which is in substance the same as that of our code with reference to the right of a defendant constructively summoned to have a re-trial within a limited period after judgment. It also provides that a defendant may be personally served out of the State, but that such service shall not entitle the plaintiff to a personal judgment. In the case of *McBride v. Harn*, 52 Iowa, 79, a defendant personally served in Ohio sought a re-trial under the section giving that right to defendants constructively summoned, contending that the section applied wherever the judgment 'could only operate *in rem*. But the Supreme Court, in deciding against the contention, said that no rule of construction authorized the extension of the section to cases not included in its express language. This appellant's case is not within the terms of the section of the Arkansas code on which he relies; and we have been unable to reach the conclusion that the intention of the statute embraces it.

4. The proof shows that the sale to Duncan was for an inadequate price. Of this the State did not complain, and the appellant was not prejudiced by the court's refusal to vacate the sale, except upon the theory that on a re-sale the land would bring more than the State's debt. But no facts were put in evidence to show that such a result was probable. The charge of collusion and fraud on the part of Duncan and other bidders is not sustained by a preponderance of the evidence; and we cannot say that the chancellor did not properly exercise his discretion in approving the sale.

Affirmed.

5. Judicial sales not set aside when.