# McConnell *v.* Day.

## Opinion delivered January 4, 1896.

Tax-Deed—Day of Sale.—As the revenue act of March 17, 1873, extended for thirty days the time for the collection of taxes, without making provision for the sale of lands found delinquent, such lands could not be legally sold until the regular time for tax sales in the succeeding year.

Judgment—Conclusiveness.—A judgment in ejectment binding upon a husband is binding upon his widow claiming as such, but such a judgment against a husband does not bind his wife claiming the land under a former husband.

Mortgage — Power to Substitute Trustee — Revocation.—The power to substitute a new trustee, given to the beneficiary in a deed of trust, is not revoked by the execution of a subsequent "extension" of the deed, which does not in terms provide for a substituted trustee, where it particularly refers to the trust deed, and makes all of its provisions a part of the extension.

Trustee's Deed—Burden of Proof.—The recitals in a deed executed by the trustee in a deed of trust, showing substantial conformity to the requirements of the deed of trust, are *prima facie* true, and the burden of showing their falsity is upon the party assailing the deed.

Judgments—Presumption.—Judgments of domestic courts of general jurisdiction are presumed, in a collateral inquiry, to be within jurisdiction, unless, from an inspection of the record itself, it can be seen that they are without.

Same—When Presumption Not Overcome.—The presumption, on collateral attack, that a judgment of a federal circuit court was within its jurisdiction is not overcome by the fact that the transcript of the record, certified by the clerk to be a true copy of the record remaining in his office, does not include a summons to defendant, nor recite jurisdiction of his person.

Burden of Proof—Adverse Possession.—The burden of proving adverse possession is upon the party who asserts title based thereon against the holder of the legal title.

Appeal from Crittenden Circuit Court in Chancery.

James E. Riddick, Judge.

Ejectment by Day & Proudfit against Ella G. Mc-Connell and others. The facts are stated in the opinion of the court.

*W. G. Weatherford*, for appellants.

1. Mrs. McConnell is not barred by the U. S. court judgment. It was void for want of jurisdiction, apparent upon the record. Mansf. Dig. sec. 5201; 49 Ark. 413; 34 Cal. 391; 57 Ark. 49, 628; 56 *id.* 338. No case can be found where a judgment record, shown by proper evidence to be a *complete* record, containing no process, no docket entry, and no order nor recital to raise the presumption of appearance has been held a valid judgment. The clerk's certificate is evidence, and the best, that this was the entire record of the case. 55 Ark. 36; 7 *id.* 369; 7 Cranch, 408; 95 U. S. 418. The presumption as to validity of a judgment of a superior court is always rebuttable by the record itself. 1 Black, Judg. sec. 270. The presumption is overthrown when the record of the *entire* case discloses no service. 12 Am. & Eng. Enc. Law, p. 273, note 2; 8 Cal. 569.

2. Mrs. McConnell was not a party to that suit, nor does she claim title through B. F. McConnell.

3. The tax sale was void. 33 Ark. 478.

4. There was no authority for the appointment of Metcalfe, the substituted trustee, and the sale by him was void. Hill on Trustees, *p. 177; 1 Perry, Trusts, sec. 289; 2 *id.* sec. 602 *g*; 55 Ark. 326.

5. No evidence was introduced to prove that the sale by Metcalfe was made according to the terms of the trust deed. 2 Perry, Trusts, sec. 602 *t*. The recitals are not sufficient. 4 Wheat. 77; 51 Ark. 452; 134 U. S. 241; I Devlin, Deeds, sec. 425; 2 Perry, Trusts, sec. 782; 62 Ala. 499.

6. Appellees are barred by the statute of limitation of seven years. When this statute is set up, the

burden is on plaintiff to show both a cause of action and the suing out of process within the period. 145 Mass. 370; 48 Ark. 282; 43 *id.* 136; 27 *id.* 343; 2 Gr. Ev. sec. 341; 16 S. E. 683; 40 N. W. 10; 51 Vt. 106.

*W. B. Edrington*, for appellees.

1. The burden of proof is upon the party who relies upon the fact of possession. 57 Ark. 97.

2. In the first deed of trust Fitzgerald & Co. had power to appoint a substituted trustee. There was no *new* instrument, but merely an extension of time of payment stipulated for in the original.

3. Recitals in trust deeds to the purchaser are, at law, generally held to be *prima facie* evidence of the facts stated, even where the power itself does not provide that such recitals shall have that effect. 43 Iowa, 286; 33 Ind. 318; 67 Miss. 169; 109 Ill. 579.

4. It will be presumed, not only against the mortgagor, but against all persons claiming under him, that a sale under a mortgage was advertised as required by the terms of the power, and the burden of proof rests upon the party attacking the sale to rebut this presumption. 26 Am. & Eng. Enc. Law, p. 902; Caine's Cases (N. Y.), 1; 2 Am. Dec. 281.

5. In collateral attacks, it will be presumed that courts of general jurisdiction have acted correctly and with due authority, and their judgments are as valid as though every fact necessary to jurisdiction affirmatively appeared. Where jurisdiction of the subject matter appears, jurisdiction of the person is presumed where the record is silent. 18 Wall. 365; Freeman on Judgments, secs. 124–132; 49 Ark. 413; 53 N. Y. 600; 11 Ark. 519, 572, 731; 13 *id.* 414, 433, 505; 14 *id.* 124; 12 *id.* 86, 272; 19 *id.* 185; 18 *id.* 294; 20 *id.* 78; 21 *id.* 367; 44 *id.* 426, 270; 33 *id.* 828; 37 *id.* 540; 47 *id.* 419; 32 *id.* 691; 18 How. 164; 117 U. S. 269.

BOURLAND, Sp. J. This was an action in eject-
ment in the Crittenden circuit court, brought by appel-
lees to recover from the appellant a large quantity of
land, being portions of sections 14, 22, 23 and 24, in
township 5 north, of range 8 east, of which it is alleged
that appellant is in the unlawful possession. The plead-
ings are lengthy, and the whole record suggests the
propriety of an attempt at condensation of treatment.
It is believed, therefore, that a substantial statement of
the facts disclosed by the record will afford a sufficiently
favorable view of the issues and points of contention
between the parties.

Appellees' deraignment of title appears to have a
double aspect. It seems that one John G. Rieves had
owned the land in controversy, and that Ella G., the
appellant, was then his wife. In the spring of 1875,
Rieves died in possession, childless, and widowing Ella
G., who, left in possession, inter-married in 1877, with
B. F. McConnell, who has since died. From exhibits in
evidence, it appears that in 1871 Rieves and his wife,
Ella G., conveyed the land in trust to one Jefferson, for
Fitzgerald & Company, with power in the trustee to
sell in the event of default. The instrument also con-
tains a power in the *cestui que trust* to substitute in
writing a new trustee upon conditions specified. Jeffer-
son, the trustee, in January, 1876, by a written declina-
tion, renounced the trusteeship, and on the same day the
*cestui que trust* in like manner substituted and ap-
pointed in his stead one Metcalf. The new trustee,
Metcalf, in March of the same year, executed and de-
livered to Fitzgerald & Company, in apparently regular
form, a deed containing recitals as to default, advertise-
ment, sale and purchase of the land by Fitzgerald &
Company; and the latter, in July, 1882, by deed with-
out warranty, conveyed the land to B. F. McConnell.
From a tax deed in evidence, however, it is made to ap-

pear that, for the year succeeding the execution of the trust deed by Rieves and wife, namely, for the year 1872, the lands were forfeited for taxes. They, on that account, were sold by the collector, and one Hardin became the purchaser, and received a certificate. It appears that the collector's sale took place on the 11th day of June, 1873. Thereafter, and when more than two years had expired from the date of the tax sale, appellees, Day & Proudfit, became purchasers from Hardin, taking an assignment of his certificate, upon which the county clerk issued to them this tax deed.

In this connection, it is appropriate to advert to another trust deed offered and read in evidence by appellant, apparently without objection, in conjunction with other evidence, for the obvious purpose of destroying the alleged tax deed as a link in the chain of appellees' title. This trust deed was executed in March, 1873, two years after the execution of the Fitzgerald deed. It was executed by Rieves and wife to one Oliver, trustee for Day & Proudfit, appellees in this action; and at the time of their purchase from Hardin, and of the execution of the tax deed to them, Oliver, the trustee, was in possession of the premises, at their instance, appropriating the rents and profits to the trust debt. It is not amiss to observe here that the Oliver deed does not embrace the land lying in section 22; and if the trust was ever finally executed, the fact does not appear in the record. In any event, appellees do not, it seems, rely upon this deed in their deraignment of title.

And again, recurring to McConnell, who, we have seen, purchased under the Rieves-Jefferson deed, it appears that, four years after his purchase, McConnell was in possession of the land, and it is made to appear that, during a portion of that period, at least, he rented from Day & Proudfit. It may be inferred, we think, from the circumstances, that McConnell rented under the

belief that the title of Day & Proudfit, under the tax deed, was superior to his own under the Jefferson trust deed; but, after a time, changing his mind, he asserted title to the land, and refused to give up the possession. In any event, it appears from a transcript of the record of the federal circuit court, sitting at Little Rock, that Day & Proudfit sued him in March, 1886, they being citizens of Tennessee, and he a citizen of Crittenden county, Arkansas. This transcript of the record of the federal court is duly certified, under the official seal of the clerk of that court, to be "a true, correct and compared copy of the *record remaining in my office*, and constitutes a complete transcript of the record in the above entitled cause." There is contained in the transcript a complaint in ejectment by Day & Proudfit against B. F. McConnell, with exhibits, setting up title under the tax deed already mentioned, and alleging that the plaintiffs own the land, and are entitled to the possession, and that McConnell unlawfully withholds the same, with prayer for possession. There is also a copy of the judgment, finding that Day & Proudfit owned the land and were entitled to the possession as against McConnell, and writ of possession was accordingly adjudged, with cost. There is, likewise, transcribed a return, certified to have been made on a writ of possession, showing that the lands were delivered to Day & Proudfit by the marshal of the eastern district of Arkansas, on the 17th day of November, 1886. If McConnell was summoned in the action, however, or if a summons was issued, or if he in any way appeared, the record is silent as to the fact.

To each link in appellee's title, thus offered in evidence, appellant filed exceptions before the trial : (1) To the tax deed, because it shows a sale on the 11th day of June, 1873, which, it is alleged, renders the deed void ; (2) to the transcript of the federal court, be-

cause appellant, not being a party to the suit, is not, it is alleged, bound by the judgment, and because Mc-Connell, it is alleged, was not summoned, and did not in any manner appear in the suit; and (3) to the Metcalf deed, because he was not rightfully appointed, it is alleged, nor did his deed show lawful sale. The exceptions were severally overruled, and properly reserved for adjudication here. But their consideration will be more convenient in another connection.

Appellant's view of the law, as indicated, was embodied in several instructions asked, but refused; and, having set up in her answer the plea of adverse possession in bar of the action, she also asked an instruction to the effect that as to this plea the onus of proof was on the plaintiffs. This instrument was likewise refused, and her exceptions reserved. The court thereupon instructed the jury, in effect, that the chain of title in evidence upon the part of appellees, in connection with the transcript of the federal court, showed ownership in them, and their right to the possession as against appellant, unless the jury believed, from the evidence, that appellant's plea of adverse possession had been established. And upon the plea of adverse possession the jury were instructed, in substance, that such possession must have been continuously in appellant for seven years at least; that it must appear from the evidence to have been open, notorious and adverse; that any break in the continuity of her possession, if she had it, would work a loss of the time prior to, and during the break, and if she resumed the possession, the time must be reckoned from that event.

The evidence as to adverse possession was in sharp conflict. From the foregoing, it is sufficiently clear that the appellant relied not solely upon her plea of adverse possession, but that she stood upon her rights,

real or supposed, as the relict of John G. Rieves, disputing the strength of appellees' title to divest her.

The first question, then, is: Does appellees' chain of title, in connection with the transcript of the federal court, show ownership in the lands, or the right to the possession, as against appellant, waiving, for the present, the consideration of her plea of adverse possession.

And first, as to the tax deed. It is of course clearly void. The time of the sale of the lands by the collector, the 11th day of July, 1873, was not the time prescribed by law for the sale of delinquent lands. The legislature, in that year, by act of March 17, extended for thirty days, the time for the collection of taxes, but no provision was made for the sale of lands found delinquent at the end of the extension. So that the general revenue law in force must have governed. The effect of this was that the lands could not have been legally sold until the regular time for such sales in the succeeding years. *Vernon* v. *Nelson*, 33 Ark. 748; *Allen* v. *Ozark Land Company*, 55 Ark. 549.

*Tax sale on wrong day is void.*

And it is to be borne in mind that it was upon this tax deed, void though it be, that appellees founded their action against McConnell, and obtained a judgment for the lands, in the federal court. It is insisted, however, that this judgment is void also; at least, that it does not conclude appellant, who was not a party to it. The contention here, it must be declared, has given the court most serious concern; but a definite conclusion has been reached, and that conclusion, hereafter to be expressed, in its proper connection, is thought to be supported by sound reason, a wise public policy and the clear weight of authorities. It is not a question, of course, whether appellant, if she had been a party of record to the suit in the federal court, would be concluded by its judgment. The suit was against B. F. McConnell, and the judgment was against him. At

*When judgment against husband conclusive against wife.*

that time, certainly, appellant was his wife. And what will conclude him in this regard must, then, it seems, also conclude *her;* but only, it is to be observed, as to the rights which, but for the judgment, she might, as the widow of McConnell, assert to the subject-matter of that suit. Now, if the judgment, in its collateral relation here, must be held to be valid, as against McConnell, the doctrines of *res judicata* and *estoppel* effectually close his mouth, as well as a denial of the validity of the tax deed, as to the assertion of any rights under the Fitzgerald conveyance, which he held at the date of the judgment. The same may be said, of course, of his widow, as such. In other words, assuming the validity of the judgment, she is concluded, as the widow of McConnell, from disputing the tax deed, and from taking any claim to the land, or taking any benefit on account of the Fitzgerald deed to McConnell.

But it is not as the widow of McConnell only that we are to pass upon the asserted rights of appellant. What rights had she as the widow of Rieves? If any, can it be said that, as to them also, she is concluded by the federal court judgment? We think not, but at the same time we are unable to find favorably to her contention that she has such rights. Her contention is that, the tax deed being void, her rights as Rieves' widow remain, as to that, intact; and, appellees not relying on the Oliver deed, her further contention is that the Fitzgerald conveyance to McConnell is void, so that her right to the possession, which she has, is clear, at least as against appellees.

As to power to substitute a trustee. And this brings us to the question of the validity of the Fitzgerald deed. It is insisted by appellant, as to this, that Metcalf, who assumed to sell the land as trustee, had no authority, because, it is claimed, Jefferson only is mentioned in the deed as trustee, and there was no power of substitution. It is conceded by

appellant that such power was provided for in the original deed, but it is contended by her also that there was a new deed, and that in it, which, she maintains, took the place of the old, there is no provision for a substituted trustee. If this were the legal effect of the instruments in evidence, her contention would not be without merit. Hill on Trustees, 177; 2 Perry, Trusts, sec. 602g; *Stallings* v. *Thomas*, 55 Ark. 326. But, instead of there being a new deed, there was an instrument, executed by the parties, in which it is substantially declared that it is not intended to be a new deed, but an "extension." And while the "extension" does not in terms provide for a new or substituted trustee, it expressly and particularly refers to the trust deed, and makes all of its provisions a part of the extension.

Metcalf, then, as we have seen, being properly ap- *Burden of proof to overthrow trustee's deed.* pointed, was his sale according to the terms of the deed? He was appointed in writing, as provided. There are, in the deed, provisions for the manner of sale in case of default; and an examination of the deed executed by Metcalf shows recitals in substantial conformity to the requirements of the deed ; and if the recitals are not true in any particular, it devolved on appellant to overturn them by competent evidence, which was not attempted. It follows that the deed is valid. *Dryden* v. *Stephens*, 19 W. Va. 1; *Hess* v. *Dean*, 66 Tex. 663; *Bergen* v. *Bennett*, 2 Am. Dec. 281; *Minuse* v. *Cox*, 9 Am. Dec. 313; *Graham* v. *Fitts*, 53 Miss. 307; *Turner* v. *Watkins*, 31 Ark. 429; *Tyler* v. *Herring*, 67 Miss. 169. As a result, it follows, too, *that, the Rieves title having passed to McConnell*, appellant, *as the widow of Rieves*, has no interest in the land.

Moreover, it is apparent from the foregoing that appellees must recover on the strength of their title in this action, as against her, unless, as has been remarked, she can either maintain her plea of adverse possession,

or defeat appellees' tax deed ; and the latter she is estopped from doing unless the judgment of the federal court against McConnell, her last husband, be void. 1 Herman, Estoppel, p. 561; *Poorman* v. *Mitchell*, 48 Mo. 45 ; *Pollard* v. *Railroad Co.* 101 U. S. 223.

*Presumption as to judgment of superior court.* After mature deliberation we are not prepared to declare the judgment void in this collateral inquiry. The clear weight of the authorities state the rule to be that, in a collateral proceeding, the judgments of domestic courts of general jurisdiction are presumed to be within jurisdiction, unless, from an inspection of the record itself, it can be clearly seen that they are without. *Culley* v. *Edwards*, 44 Ark. 426 ; *Adams* v. *Thomas*, 44 Ark. 270 ; *Apel* v. *Kelsey*, 47 Ark. 419 ; *Bosworth* v. *Vandewalker*, 53 N. Y. 600 ; *Galpin* v. *Page*, 18 Wall. (U. S.) 365.

*When such presumption not overcome.* It is insisted by appellant that the record, being certified to be "true copies of the record *remaining in the clerk's office*," and that the "transcript is complete," it is a showing by the record itself, no summons appearing, that there was no summons, and that the defendant was never brought into court. The argument possesses plausibility, nor is it to be denied that it is supported by eminent authorities ; but the decided weight of the authorities is, we think, the other way.

The judgment under consideration, according to the best reason that we have been able to bring to bear, is properly said to be silent as to the means whereby the defendant was brought into court. The clerk, it is true, certifies all of the records of that case, *remaining in his office:* but whether there ever was on file a summons with a return of service thereon, which has since been lost; or whether the defendant irregularly appeared corporally, without formal summons, and consented to judgment which was deemed by the court sufficient, without reciting the fact in the record, the

clerk probably did not know ; or if he had so known, it
is not within the scope of his duties to put such facts
on record by his certificate.    This court judicially knows
that, while the clerks of the courts are, as a rule, careful
to preserve the official files, and are, generally, pains-
taking in the discharge of official duties, they are, at
the same time, far from infallibility.    This judgment of
the federal court was solemnly rendered.    It recites that
the court heard proof on the part of the plaintiff, and,
moreover, that "the court was well and sufficiently
advised as to what judgment to render."   There is a
further recital, which is not without significance, which
is :    "And, the defendant *failing* to introduce any
proof, it is, etc.," from which it may be fairly im-
plied that the court understood, from evidence be-
fore it, that the defendant had *knowingly refused to
appear*, after service upon him, as such is one of the
accepted meanings of the word "failed."    At all events,
it is not at all probable that the court would have ren-
dered the judgment in the terms it is, unless there had
been legal evidence before the court in some form that
the defendant had been duly summoned, or had appeared
in some manner deemed sufficient.    1 Black on Judg-
ments, sec. 270, and authorities there cited ; Freeman on
Judgments, secs. 124–132 ; *Mitchell* v. *Meuley*, 32 Tex.
460 ; *Goar* v. *Maranda*, 57 Ind. 339 ; *Evans* v. *Young*,
10 Col. 316 ; *Herrick* v. *Butler*, 30 Minn. 156, 14 N. W.
Rep. 794 ; *Sloan* v. *McKinstry*, 18 Pa. St. 120 ; *Wilcher*
v. *Robertson*, 78 Va. 602.

When the jurisdiction of a court of general juris-
diction depends upon facts not appearing in the record,
they will be presumed in a collateral proceeding.   *Ap-
plegate* v. *Lexington, etc. Mining Co.*, 117 U. S. 269 ;
*Weaver* v. *Brown*, 87 Ala. 533 ; *Taggert* v. *Muse*,
60 Miss. 870.    To affirmatively establish the juris-
diction of a superior court, it is not necessary that the

facts, evidence or circumstances conferring it should be set out in the record; and, should the record disclose nothing, jurisdiction over the person will be presumed upon collateral attack of the judgment. *Grignon's Lessee* v. *Astor*, 2 How. (U. S.) 319; *Bush* v. *Lindsey*, 24 Ga. 245. And when such court *exercises jurisdiction*, and the record is silent, it will be presumed that it had jurisdiction, upon collateral attack. The presumption in such case is that *the court decided, upon facts before it*, that it had jurisdiction; and this presumption, we think, is not overturned by the fact that the clerk has certified that a transcript is complete which does not contain a summons. The summons may have been lost, but he has certified the judgment. That we have before us. And the very rendition of it being presumed to have been preceded by a finding of jurisdiction by a high judicial functionary, who must have known when the facts showed jurisdiction, a wise public policy forbids that a clerical certificate to a transcript not containing a summons shall contradict a contrary presumption flowing from the judgment itself. *Clary* v. *Hoagland*, 6 Cal. 685.

It is our opinion, therefore, that the lower court did not err in the instructions as to the effect of appellee's "chain of title," in connection with the judgment of the federal court.

Appellant had no right as the widow of Rieves. The jury found against her plea of adverse possession, under proper instruction, or at least that were not unfavorable to her; and, while the title of appellees has the defects which have been pointed out, the judgment of the federal court against McConnell confronts his widow with the doctrines of estoppel and *res judicata*, which cut her off from any means of attack, or defeat her in any assault upon appellees' title.

We have, finally, to say that the *onus* of proof as to Burden of proof as to adverse possession. adverse possession, set up by appellant, was on her, and the court properly refused her request to instruct that the *onus* in such case was on appellees; and if there were any errors in the court's instructions on this subject, they were, we think, in appellant's favor.

There are some further exceptions reserved, but not of any practical importance. Finding, therefore, no error in the record to the prejudice of appellant, the judgment of the lower court is affirmed.