## FILES *v.* JACKSON.

### Opinion delivered November 18, 1907.

1.  TAX SALE—VALIDITY.—All tax sales made in the year 1873 for non-payment of the taxes of the previous year are void. *McConnell* v. *Day,* 61 Ark. 464, followed. (Page 591.)

2.  ADVERSE POSSESSION—EVIDENCE.—Evidence that plaintiff openly claimed title to land, that he cut stove wood and poles for gardening purposes from it, and that no one disputed his ownership until defendants set up title, is insufficient to prove adverse possession. (Page 592.)

3.  TAXATION—VOID SALE—REIMBURSEMENT OF PURCHASER.—One who purchases from the State land forfeited for taxes is entitled to be reimbursed for the taxes paid by him, in case the tax sale is held to be void. (Page 593.)

Appeal from Ashley Chancery Court; *James C. Norman,* Chancellor; reversed in part.

This is a contest in which the three contestants claim the ownership of the northwest quarter of northwest quarter of section twenty-three (23), township seventeen (17)' south, range seven (7) west.

Appellant, Files, claims under a purchase from the State, November 17, 1875. Appellees claim under what is alleged to be a deed from appellant Dorman, with an assignment of dower by Mrs. Johnson, mother of Mrs. Dorman, dated November 10, 1888, and filed for record in recorder's office, Ashley County, January 31, 1889; and appellant Dorman, denying the execution of the deed to appellees, claims under an inheritance from her father, H. D. Lowe.

The facts are that H. D. Lowe died May 4, 1863, seized and possessed of the land involved in this controversy; that he made a will, which was duly probated and recorded. Under said will there were but two devisees, to-wit: Emaline T., widow, and Emma H. Lowe, daughter.

The testator bequeathed to E. T. Lowe, widow, one-third, and to Emma H. Lowe, daughter, two-thirds.

The widow was married to A. L. Johnson, July 4, 1864. Johnson is dead. The daughter was married to A. N. Moss, January 9, 1881, at the age of 19 years, and was divorced from Moss, May 10, 1892. About six months after her divorce from Moss, in 1892, she married Levi Dorman, and is still the wife of Dorman.

The land had been forfeited for non-payment of taxes, and on November 17, 1875, appellant Files bought it from the State, and the State Land Commissioner made him a deed. This deed was destroyed by fire, and appellant made proof of loss, and applied to Auditor of State and State Treasurer, and obtained proof of purchase.

Appellant, Files, brought suit in ejectment against appellees, Jackson and A. H. Wilson, on January 21, 1896. Jackson and Wilson filed answer between January 23, 1896. Case was

continued. Before the next term of court (August, 1896) Wilson died. At the August term, 1896, Wilson's death was suggested, and his heirs were made defendants. Divers and sundry pleadings were had in the circuit court, as shown by the record, until August 20, 1901, when appellant, Files, filed a petition asking that Mrs. Dorman be made a party, and that the cause be transferred to Ashley Chancery Court, which was done.

At the May term of the chancery court, May 23, 1903, Mrs. Dorman entered her appearance, and filed her separate answer. At May term, 1904, May 18, Mrs. Dorman filed amendment to her answer, and made it a cross-bill against appellees. Thus the complaint of appellants, the answer of appellees, and the answer and amendment and cross-bill bring before the court the contentions of the litigants.

Appellant, Files, claims that, under his deed from the Commissioner of State Lands, he took peaceable and quiet possession of the land, exercised ownership over it for a period of nineteen (19) years, and paid taxes on it for the years 1876 to 1888, inclusive, twelve (12) years, and also for several subsequent years, without notice of any claimant, or protest, or claim of ownership from any one; nor was he aware of any claim by any one adverse to his until latter part of year 1895, when he was informed that appellant Jackson was having a fence erected along the north line of the tract; and, having learned that Jackson and Wilson were claiming the land, and claiming to be in possession, he commenced suit January 2d, 1896.

In their answer, Jackson and Wilson claimed to be owners and in possession, and set up the statute bar of seven years.

The relative contentions and claims of the parties will appear by other facts and statements in the opinion.

There was a decree for appellees.

*A. W. Files* and *T. M. Hooker,* for appellants.

1. Record evidence shows that "at Auditor's sale of land forfeited for taxes, held on the 9th day of June, 1873," the land in controversy "remained forfeited to the State," etc. The presumption is, in the absence of proof to the contrary, that every

act of the officer making the sale was regular, and that the recitals of the commissioner's certificate are correct. The Commissioner of State Lands was authorized to sell. Gantt's Digest, § 3914; 58 Ark. 151; 49 Ark. 266. The deed is *prima facie* evidence of title. 45 Ark. 80; 46 Ark. 96; 50 Ark. 209; 51 Ark. 453; 52 Ark. 132; 53 Ark. 418; 59 Ark. 209; 60 Ark. 499; 7 Ark. 424; 18 Ark. 423; 15 Ark. 331.

2. If the deed was invalid, it was color of title, which has ripened into a perfect title by reason of adverse possession for more than the statutory period. 48 N. W. 407; 3 Ballard, Real Prop. § 27; 6 *Id.* § 66; 55 N. W. 962; 38 Pac. 244; 111 Ala. 589.

3. It was clearly an error in the court to refuse appellant a decree for the amount of purchase money paid for the land, together with all taxes, penalties, costs, and interest. 28 Ark. 299; 39 Ark. 196; 51 Ark. 453; 28 Ark. 304; Gantt's Dig. § 5200.

4. The deed to appellee, being a forgery, gave no color of title to him; hence there is no merit in his claim of title by adverse possession, unless such possession was open, hostile and notorious for the full statutory period, before suit was brought; and, since the suit was brought within seven years from the time the deed was recorded, the claim falls to the ground.

*Geo. W. Norman,* for appellees.

1. The evidence is ample to sustain the court's finding as to the execution of the deed.

2. Appellant must succeed, if at all, upon the strength of his own title, and the burden is on him to prove title in himself; and he cannot succeed on an after-acquired title. 47 Ark. 413; 65 Ark. 422; 76 Ark. 520; *Id.* 163; 65 Ark. 610; 36 Ark. 415.

3. All tax sales for the non-payment of taxes of 1872, if made in 1873, are void. 64 Ark. 579; 61 Ark. 464; 55 Ark. 551.

4. Cutting trees for fuel and rails and paying taxes do not constitute such adverse possession as would set in motion the statute of limitations. 68 Ark. 551; 57 Ark. 97; 75 Ark. 422; 43 Ark. 486; 49 Ark. 266. And there is no constructive

possession under a tax deed which is void on its face. 60 Ark. 163; 57 Ark. 523.

HART, J., (after stating the facts.) Appellant, Files, bases his claim of title upon three grounds: First. The land had been forfeited for non-payment of taxes, and on November 17, 1875, appellant, Files, purchased from the State, and the State Land Commissioner made him a deed. This deed was destroyed by fire. Appellant introduced a certificate from Commissioner of State Lands, upon which he relies for title, which recites: "At the Auditor's sale of land forfeited for taxes on the 9th day of June, 1873, the following tract of land, situated in Ashley County, remained forfeited to the State," the land in controversy.

The obvious and natural meaning of this certificate is that the land was offered for sale by the collector in 1873 for the taxes of 1872 pursuant to section 5188, Gantt's Digest, and was forfeited to the State, and that, pursuant to section 5218 of Gantt's Digest, the land was offered for sale by the Auditor and remained forfeited to the State. The Auditor, as directed by the statute, forwarded a description of the lands to the Commissioner of State Lands, who caused the same to be placed on the books of his office as vacant land. "The court takes knowledge of the fact that all tax sales for the non-payment of the taxes of 1872, if the same were made in 1873, are invalid, having been so declared by this court." *Allen* v. *Swoope*, 64 Ark. 579; *McConnell* v. *Day*, 61 Ark. 464. Hence Files's tax deed is clearly void.

Second. Appellant, Files, claims by deed from Mrs. Emma Dorman and Mrs. Emma T. Johnson, executed since the institution of this suit. It appears that on the 10th day of November, 1888, Mrs. Emma T. Johnson and Mrs. Emma Dorman, who was then Emma Moss, conveyed this land by deed to appellee T. A. Jackson and A. H. Wilson, and that the same was duly acknowledged, and was filed for record on the 31st day of January, 1889.

It is claimed that the last mentioned deed is a forgery. Mrs. Dorman says she was sick with the measles at the time it purports to have been executed, was incapable of executing it,

and did not execute it. A number of expert witnesses were introduced, who testified that the signatures to the deed, viz., Emma Moss and A. N. Moss, were written by the same person. A. N. Moss testified that Emma Moss was sick at the time the deed was executed, and that the deed was signed in her presence by J. R. Bingham, who attested the deed. Bingham testified that the deed was signed by Emma Moss in his presence, that she was not well, but that her mind was normal, and that no undue influence was used to influence her to sign the deed. On cross examination, in response to the question, "There seems to be quite a similarity in the handwriting of Emma Moss and A. H. Moss. It is not possible that one person affixed both signatures to this deed?" he answered, "I think not; I hardly know how to answer. The parties signed this deed, is my recollection."

B. B. Staton, the justice of the peace before whom the acknowledgment was taken, testified that he was present, and saw Mrs. Emma Moss sign the deed. Although she resided in the county a number of years after this time, Emma Moss never exercised any control over the land, nor has she paid or attempted to pay the taxes on it.

The chancellor found that the deed was not a forgery. The persuasive force of the chancellor's finding is not overcome by the testimony.

Third. Appellant, Files, claims title by adverse possession. He says that, soon after his purchase of the land from the State in 1875, he began cutting and using stove wood, and poles for gardening purposes from the land, and openly claimed title to it, and knew of no one that disputed his ownership until appellees set up claim of ownership. That he lived near the land until latter part of 1882, when he moved to Little Rock. That he asked his brother and some of the neighbors to prevent any one from trespassing upon the land. This was not sufficient to constitute adverse possession. In the case of *Driver* v. *Martin,* 68 Ark. 551, it was held: "Prior to the act of March 18, 1899, payment of taxes on wild and unimproved lands, in connection with fitful acts of ownership, such as cutting trees for fuel and rails, did not constitute such adverse possession as would set

the statute of limitations in motion." See *Earle Improvement Company* v. *Chatfield,* 81 Ark. 296, and Arkansas cases cited therein.

In the event of an adverse decision on his main contentions in the case, appellant, Files, claims that he is entitled to a lien for all taxes paid by him. In this he is correct. In construing the act of March 16, 1879, "to provide for the redemption of delinquent lands," the court held the act void, but said: "The court is of the opinion, however, that, under the circumstances of the case, the petitioner Bagley would have an equity to be reimbursed the amounts paid out to relieve the land from taxes. The act was short-lived, and has been since repealed. Doubtless, many purchases from the State have been made under it in good faith; and, as they have inured to the benefit of the owners, it would be inequitable that the owners should be thus relieved at the expense of those who had relied upon what they had good reason to believe was a valid act of the sovereign power. For the equitable adjustment of all such cases growing up whilst the law was supposed to be in existence, it is reasonable that those who have paid the taxes should have a lien upon the lands for the burdens discharged, not only by original purchase, but by the payment of the taxes of subsequent years." *Bagley* v. *Castile,* 42 Ark. 91; *Lester v. Richardson,* 69 Ark. 201.

This principle applies with peculiar force here. The original purchase of Files was under section 3914, Gantt's Digest, which provides that "at any time after the close of the Auditor's sale, the Commissioner of Immigration and State Lands shall sell any of the lands and town lots offered for sale by the Auditor, and not sold for want of bidders, to any person wishing to purchase the same, who shall pay the State and county tax, together with the interest, penalties and expenses due thereon."

Files only paid the State what the owner could have paid had he redeemed the lands. This and the subsequent payment of taxes inured to the owner's benefit.

The chancellor should have rendered a decree in favor of appellant Files for the $24.46 shown to have been paid by him

to the State for the purchase of the land, being the State and county tax, with interest, penalties and expenses, and also for the amount of taxes paid by him for subsequent years, with interest on same and on the amount of the original purchase at the rate of six per cent., and declared the same a lien on the land.

For this error, the cause is reversed and remanded with directions to enter a decree in accordance with this opinion.

WOOD, J., not participating.